IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sarah Schock,                          :
                  Petitioner           :
                                       :
            v.                         :
                                       :
Workers' Compensation Appeal           :
Board (Brown's Super Stores t/a        :
Shop-Rite),                            :      No. 478 C.D. 2019
                  Respondent           :      Submitted: September 13, 2019


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                            FILED:  December 12, 2019


            Sarah Schock (Claimant) petitions this Court for review of the Workers'
Compensation (WC) Appeal Board's (Board) March 26, 2019 order affirming the
Workers' Compensation Judge's (WCJ) decision after remand granting Brown's
Super Stores t/a Shop-Rite's (Employer) Petition to Terminate Compensation
Benefits (Termination Petition), and denying Claimant litigation costs.  Claimant
presents three issues for this Court's review: (1) whether Claimant was entitled to
wage loss benefits pending remand; (2) whether the Board erred by affirming the
WCJ's decision granting Employer's Termination Petition; and (3) whether the Board
erred by affirming the WCJ's decision denying Claimant reimbursement for Donald
McCarren, M.D.'s (Dr. McCarren), and Neil Kahanovitz, M.D.'s (Dr. Kahanovitz)
depositions.[1]  After review, we affirm.

            [1] Claimant includes an additional issue in her "Statement of Issues Presented": whether the
WCJ issued a reasoned decision.  *See* Claimant Br. at 2.  Because the reasoned decision issue is

Claimant worked for Employer as a deli clerk. On April 30, 2012, Claimant slipped and fell at Employer's premises and injured her lower back. On August 7, 2012, Employer issued a medical-only Notice of Compensation Payable (NCP) describing the injury as a lumbar strain. *See* Reproduced Record (R.R.) at 1. Claimant filed a claim petition seeking partial disability benefits from April 30, 2012 to July 16, 2012, and total disability benefits thereafter. She also filed a penalty petition alleging that Employer failed to recognize compensable injuries in its NCP and failed to pay compensation when due. Employer denied Claimant's allegations. On June 12, 2013, Employer filed the Termination Petition to end Claimant's WC benefits effective June 6, 2013, the date on which an independent medical examination (IME) determined Claimant had fully recovered from her work-related lumbar strain. Claimant denied Employer's claims.

A WCJ conducted hearings on December 10, 2012, April 24, April 25, July 31, October 30, and December 18, 2013, and March 17, 2014, at which Claimant testified and presented the deposition testimony of, *inter alia*, Kenneth Izzo, M.D. (Dr. Izzo) and Andrew Freese, M.D. (Dr. Freese). Employer presented deposition testimony from, *inter alia*, Evan Kovalsky, M.D. (Dr. Kovalsky), Dr. McCarren and Dr. Kahanovitz. On June 26, 2014, the WCJ granted Claimant's claim petition insofar as she was disabled due to her work injury for four periods of time between April 30, 2012 until June 6, 2013.[3] The WCJ found that Claimant's disability ceased

---

subsumed in the issue of whether the Termination Petition was properly granted, those issues will be addressed together herein.

[2] Some facts have been adopted from *Schock v. Workers' Compensation Appeal Board (Brown's Super Stores)* (Pa. Cmwlth. Nos. 1352, 1366 C.D. 2016, filed August 21, 2017) (*Schock I*).

[3] Specifically, the WCJ awarded Claimant temporary total disability benefits for the following periods during which she was unable to work: July 16-August 19, 2012, August 28-October 9, 2012, October 19-November 26, 2012, and December 4, 2012-June 6, 2013. The WCJ also granted her partial disability benefits for the following times during which she was able to

2

as of June 6, 2013.  Accordingly, the WCJ granted Employer's Termination Petition effective June 6, 2013.  Both parties appealed to the Board.[4]

On June 16, 2015, the Board affirmed the WCJ's decision to the extent it partially granted Claimant's claim petition and denied her penalty petition, but vacated the WCJ's decision in part and remanded for the WCJ to make an award for reimbursement of those litigation costs that Claimant incurred relative to the issues on which she prevailed.

On December 21, 2015, after remand, the WCJ awarded Claimant litigation costs attributable to the deposition testimonies of Dr. Freese, Dr. McCarren, Dr. Kahanovitz and a lay witness because they related to the successful parts of Claimant's claim petition.  Both parties appealed to the Board.  On July 28, 2016, the Board reversed the WCJ's litigation cost award related to Dr. McCarren's and Dr. Kahanovitz's deposition testimony, and affirmed the WCJ's decision in all other respects.  Claimant appealed from the Board's June 16, 2015 and July 28, 2016 orders to this Court.[5]

On August 21, 2017, this Court: vacated the Board's June 16, 2015 order granting the Termination Petition and remanded for the WCJ to issue a reasoned decision more adequately explaining her credibility determinations; and affirmed the July 28, 2016 order affirming the cost award for the Dr. Freese and lay witness depositions, but vacated the July 28, 2016 order insofar as it reversed the cost award for the Dr. McCarren and Dr. Kahanovitz depositions, which were to be reconsidered based upon a reasoned decision on the Termination Petition.  *See Schock v. Workers'*

---

work light-duty for less than her pre-injury wages: April 30-July 16, 2012, August 20-August 27, 2012, October 10-October 18, 2012, and November 27-December 3, 2012.

[4] On August 8, 2014, the Board granted supersedeas as to costs incurred for the depositions of Dr. Freese, Dr. McCarren, Dr. Kahanovitz and a lay witness, but denied supersedeas in all other respects.  *See* R.R. at 18-20.

[5] *See Schock I*, wherein the appeals were consolidated for this Court's review.

*Comp. Appeal Bd. (Brown's Super Stores)* (Pa. Cmwlth. Nos. 1352, 1366 C.D. 2016, filed August 21, 2017) (*Schock I*).

On February 23, 2018, the WCJ issued her remand decision (Remand Decision), therein incorporating her June 26, 2014 findings of fact and making additional findings as to the credibility of testimony by Dr. Izzo, Dr. Freese, Dr. Kovalsky, Dr. McCarren and Dr. Kahanovitz. The WCJ again granted the Termination Petition because Employer met its burden of proving that Claimant was fully recovered from her work injury as of June 6, 2013, and denied Claimant litigation costs incurred for Dr. McCarren's and Dr. Kahanovitz's depositions. Claimant appealed to the Board which, on March 26, 2019, affirmed the WCJ's decision. Claimant appealed to this Court.[6]

## Discussion

Initially,

> [i]n a claim petition, the claimant has the burden of proving all elements necessary to support an award, including the

---

[6] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

> 'In performing a substantial evidence analysis, this [C]ourt must view the evidence in a light most favorable to the party who prevailed before the factfinder.' 'Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party.' It does not matter if there is evidence in the record supporting findings contrary to those made by the WCJ; the pertinent inquiry is whether the evidence supports the WCJ's findings.

*3D Trucking Co., Inc. v. Workers' Comp. Appeal Bd. (Fine & Anthony Holdings Int'l)*, 921 A.2d 1281, 1288 (Pa. Cmwlth. 2007) (citations omitted) (quoting *Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003)).

4

burden to establish the duration of disability.[7]  A claimant establishes ongoing disability by the presentation of unequivocal medical evidence.  When a claimant fails to present unequivocal testimony establishing ongoing disability after a certain date, benefits are properly terminated as of that date.

*Wagner v. Workers' Comp. Appeal Bd. (O'Malley Wood Prods., Inc.)*, 805 A.2d 683, 684-85 (Pa. Cmwlth. 2002) (citations omitted).

## 1.  Benefits Pending Remand

Claimant contends that this Court's August 21, 2017 decision vacating the Board's decision upholding the WCJ's grant of Employer's Termination Petition entitled her to reinstated wage loss benefits from June 6, 2013 (Termination Petition effective date) to February 23, 2018 (Remand Decision date).  *See* Claimant Br. at 2, 17-18.  Employer responds that this claim is groundless because this Court's August 21, 2017 order does not expressly award Claimant WC benefits in conjunction therewith, and Claimant waived the issue by failing to raise it in response to the WCJ's February 23, 2018 Remand Decision.  *See* Employer Br. at 55 n.10.

Subject to exceptions not applicable here, Pennsylvania Rule of Appellate Procedure (Rule) 1551(a) specifies that "[n]o question shall be heard or considered by the court which was not raised before the government unit[.]" Pa.R.A.P. 1551(a).  Moreover, the waiver doctrine, which applies in WC proceedings, requires parties to raise issues at the earliest possible opportunity.  *See Rox Coal Co. v. Workers' Comp. Appeal Bd. (Snizaski)*, 807 A.2d 906 (Pa. 2002).

---

[7] "Under [the WC Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710], the term 'disability' is synonymous with loss of earning power." *Donahay v. Workers' Comp. Appeal Bd. (Skills of Cent. PA, Inc.)*, 109 A.3d 787, 792 (Pa. Cmwlth. 2015). Therefore, "[i]f the reduction in earnings is not tied to a loss of earning power attributable to the work injury, no disability benefits are due." *Id.* at 793.

5

Here, Claimant did not raise the reinstated wage issue to the WCJ during remand, nor in her March 7, 2018 appeal from the WCJ's remand decision to the Board. Rather, she raised it for the first time in her April 23, 2019 appeal to this Court from the Board's decision after remand, as follows:

> The [Board] failed to comprehend that the portion of the original [d]ecision GRANTING the claim petition was NOT [v]acated, so the award of benefits was ongoing as of the date the [t]ermination was [v]acated, and benefits should have been paid retroactive to the date [Employer] was (erroneously) awarded a termination of those benefits.

Petiton for Review at 3.

The law is well settled that "[r]emand orders are interlocutory and not appealable except by permission in accordance with [Section 702(b) of the Judicial Code,] 42 Pa.C.S. § 702(b) and [Rule] 1311 [(relating to interlocutory appeals by permission)]." *Macaluso v. Workmen's Comp. Appeal Bd. (Phila. Coll. of Osteopathic Med.)*, 597 A.2d 730, 731 (Pa. Cmwlth. 1991). Because the *Schock I* opinion was interlocutory, the first opportunity for Claimant to raise the reinstatement issue was in response to the WCJ's February 23, 2018 Remand Decision, but she did not. Since Claimant failed to first raise the reinstatement issue below, it is waived. Claimant's attempt in her petition for review to bootstrap the issue as a *Board error* (i.e., "The [Board] failed to comprehend") does not salvage the waiver. Petition for Review at 3.

Notwithstanding, Claimant's argument that this Court's August 21, 2017 remand order entitled her to reinstated benefits lacks merit. We acknowledge this Court's rulings that "[a]n order of the Board vacating a [WCJ's] order and remanding the case for further findings of fact has the effect of reinstating [an NCP] issued before the [WCJ's] decision . . . ." *Mason v. Workmen's Comp. Appeal Bd. (Hilti Fastening Sys. Corp.)*, 657 A.2d 1020, 1024 (Pa. Cmwlth. 1995); *see also Kurtz v.*

6

*Allied Corp.*, 561 A.2d 1294, 1298 (Pa. Cmwlth. 1989) ("[T]he effect of an order of the Board vacating the [WCJ's] decision and remanding the case to the [WCJ] for further findings is to reinstate the [NCP] prior to the [WCJ's] decision.").

In the instant matter, however, the *Schock I* order specifically *vacated the Board's order* and instructed the Board to return the matter to the WCJ to explain the objective bases for her credibility determinations underlying her termination decision. *See Schock I*, slip op. at 20-22, 25, Order. The *Schock I* Court *did not vacate the WCJ's order* granting Employer's Termination Petition. Because the WCJ's June 26, 2014 order denying wage loss benefits after June 6, 2013 remained in effect, Claimant would not have been entitled to wage loss benefits pending remand.

### 2. Termination Petition

Claimant argues that the WCJ's substantial evidence analysis on remand failed to address several of her claims. Claimant specifically asserts that the Termination Petition should have been denied based upon her credible testimony of ongoing, worsening pain; and, since the WCJ's February 23, 2018 credibility determinations were logically inconsistent with Claimant's credible testimony, the WCJ did not issue a reasoned decision. Employer asserts that Claimant's argument is nothing more than "a camouflaged expression of dissatisfaction with the credibility assessments made by the ultimate factfinder." Employer Br. at 19.

Preliminarily, the law is well established that "[t]he WCJ is the ultimate factfinder and has exclusive province over questions of credibility and evidentiary weight." *Univ. of Pa. v. Workers' Comp. Appeal Bd. (Hicks)*, 16 A.3d 1225, 1229 n.8 (Pa. Cmwlth. 2011). Moreover, "[t]o succeed in a termination petition, an employer bears the burden of proving by substantial evidence that a claimant's disability ceased, or any remaining conditions are unrelated to the work injury." *Westmoreland Cty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008).

7

The burden is substantial since disability is presumed to continue unless and until proven otherwise. *Giant Eagle, Inc. v. Workmen's Comp. Appeal Bd. (Chambers)*, 635 A.2d 1123 (Pa. Cmwlth. 1993).

> In a case where the claimant complains of continued pain, this burden is met when an employer's medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury. If the WCJ credits this testimony, the termination of benefits is proper.

*Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997) (footnote omitted); *see also Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195 (Pa. Cmwlth. 2007).

"The determination of whether a claimant's subjective complaints of pain are accepted is a question of fact for the WCJ." *Udvari*, 705 A.2d at 1293. The *Schock I* Court summarized:

> Claimant testified in person and by deposition. Claimant stated that she started working for Employer in August 2011 and had no problems with her back before that date.[FN2] Her job duties as a deli clerk included slicing deli meat and cheeses and preparing deli products. She lifted up to 50 pounds and stood six to eight hours a day. She earned $8.00 per hour, or $300[.00] per week before taxes.
>
> Claimant testified that the April 30, 2012, work incident caused pain in her lower back that '[s]hoots down into [her] left leg, into [her] left foot and then [she] also ha[s] pain down the right, in the back until about [her] ankle.' Claimant did light-duty work for Employer from April 30, 2012, until July 16, 2012. Thereafter, she worked as a greeter for four hours a day, from August 20, 2012, through August 27, 2012; from October 10, 2012, until October 18, 2012; and from November 27, 2012, until December 3, 2012. As a greeter, Claimant sat at the front door and handed out circulars. Claimant has not returned to work

since December 3, 2012, because the pain in her back and leg 'became unbearable.'

Claimant testified that she was first treated at [Concentra Occupational Medicine (]Concentra[)] and then transferred to Rothman Institute, which administered an epidural injection that only worsened her pain. [The] Rothman Institute referred Claimant to Dr. [] Izzo, who did a functional capacity evaluation, followed by an electromyogram (EMG) on November 26, 2012. In the meantime, on November 16, 2012, Employer issued a Notice of Ability to Return to Work to Claimant, based on an IME done by Dr. [] Kovalsky. On June 11, 2013, Claimant underwent a back surgery performed by Dr. [] Freese; until then, she testified, her pain has 'progressively gotten worse.'

> [FN2] Claimant acknowledged sustaining a back injury in 1999, from which she fully recovered.

*Schock I*, slip op. at 2-3 (internal record citations omitted).

In the June 26, 2014 decision, the WCJ made the following finding of fact (FOF) regarding Claimant's testimony:

This [WCJ] had the opportunity to observe Claimant during her testimony and finds her credible based on her demeanor. Her testimony is credible that on April 30, 2012 she slipped and fell and injured her lower back. Her testimony is credible that she attempted to return to light-duty work on four occasions and last worked on December 3, 2012, at which point she did not continue to work because of her symptoms. Her testimony is credible that she had a prior back injury for which she received treatment, but she was not treating for back pain at the time of her work injury.

WCJ 6/26/14 Dec. at 9 (FOF 15). Contrary to Claimant's argument on appeal, the WCJ did not find that all of Claimant's ongoing pain complaints are attributable to her work injury.

According to the record, Claimant's medical witness, physiatrist Dr. Izzo, first saw Claimant on October 16, 2012 for purposes of conducting a Functional

9

Capacity Evaluation (FCE). He reviewed her records and found Claimant's May 30 and August 6, 2012 MRI studies showed desiccation, bulging and circumferential annular tearing at L4-5 and L5-S1. On November 26, 2012, Dr. Izzo conducted an EMG/Nerve Conduction Study that revealed Claimant also had bilateral lumbar radiculopathy. Dr. Izzo attributed all of Claimant's conditions to her April 30, 2012 work injury. Although Dr. Izzo originally opined that Claimant could work in a sedentary capacity, after Claimant complained of increasing neck and back pain resulting from her sedentary job, he placed Claimant on disability effective December 3, 2012.

Claimant also presented the testimony of neurosurgeon Dr. Freese, who examined Claimant in April 2013. Dr. Freese reviewed Claimant's April 4, 2013 MRI that reflected Claimant's annular tear and protrusion and desiccation at L4-5. Dr. Freese recalled that a May 14, 2013 discogram revealed pain at L3-4 and L5-S1. On June 11, 2013, Dr. Freese performed lumbar laminectomies, facetectomies, discectomies and a fusion at L4-5 and L5-S1. He opined that Claimant's complaints and surgery were directly related to her April 30, 2012 work injury. Dr. Freese declared that Claimant was incapable of returning to work as of April 5, 2013 due to discogenic pain combined with radiculopathy.

Employer's medical witness, orthopedic surgeon Dr. Kovalsky, conducted an IME of Claimant on October 12, 2012. He testified that Dr. Izzo's FCE was not a true FCE because it lacked consistency and validity testing. Dr. Kovalsky also stated that the EMG data was insufficient to support a lumbar radiculopathy diagnosis. He noted that Claimant's May and August 2012 MRIs revealed no disc herniation. He observed that Claimant's May 2, 2012 examination at Concentra by Eric Solomon, M.D. (Dr. Solomon) showed no evidence of objective abnormalities other than thigh and lumbar contusions, and that her August 13, 2012 examination and testing by Jeremy I. Simon, M.D. (Dr. Simon) at the Rothman Institute revealed

no abnormalities or radiculopathy. Dr. Kovalsky declared that Claimant presented no clinical evidence of neurologic deficit or radiculopathy during his October 12, 2012 examination. He recounted that Claimant attempted to magnify her symptoms. Dr. Kovalsky opined that Claimant had not fully recovered from her work injury as of that date, but felt she was capable of performing light-duty work.

Employer's medical witness, orthopedic surgeon Dr. Kahanovitz, examined Claimant on June 6, 2013. Dr. Kahanovitz observed that Claimant's May and August 2012 MRIs revealed degenerative changes at L4-5 and L5-S1 without evidence of any nerve root or neurologic compression, and declared that the disc herniations in the April 2013 MRI did not evolve from the earlier MRIs. He testified that Claimant demonstrated no evidence of neurologic deficit or lumbar radiculopathy during his examination, but she did magnify her symptoms. Dr. Kahanovitz declared that Dr. Freese's surgery was not related to her work injury. Dr. Kahanovitz concluded that Claimant sustained a lumbar strain as a result of her April 30, 2012 work injury, but that she fully recovered therefrom as of the date of his examination.

Employer's medical witness, neurologist Dr. McCarren, who is certified in performing and interpreting EMG and nerve conduction studies, explained how they should be performed. He reviewed Claimant's November 26, 2012 EMG/Nerve Conduction Study and declared it incomplete because it did not demonstrate the normal activities used when conducting such a test and it resulted in erroneous conclusions. He also stated that it was unreliable because there was insufficient data to warrant a lumbar radiculopathy diagnosis and attendant surgery.

"The WCJ . . . is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses." *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000). Accordingly,

11

"Section 422(a) [of the WC Act (Act), 77 P.S. § 834,[8]] does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations. [Thus, u]nless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal."[9] *Pa. Uninsured Emp'rs Guar. Fund v. Workers' Comp. Appeal Bd. (Lyle)*, 91 A.3d 297, 303 (Pa. Cmwlth. 2014) (quoting *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006)). This Court has explained:

> To constitute a reasoned decision within the meaning of Section 422(a) [of the Act], a WCJ's decision must permit adequate appellate review. Where medical experts testify by deposition, a WCJ's resolution of conflicting evidence must be supported by more than a statement that one expert is deemed more credible than another. Some articulation of the actual objective basis for the

---

[8] Section 422(a) of the Act specifies:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834.

[9] Capricious disregard "occurs only when the fact-finder deliberately ignores relevant, competent evidence." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 145 (Pa. Cmwlth. 2004). Capricious disregard, by definition, does not exist where, as here, the WCJ expressly considered and rejected the evidence. *Williams*.

12

> credibility determination must be offered for the decision to be a 'reasoned' one which facilitates effective appellate review.
>
> There are countless objective factors which may support a WCJ's credibility determinations. These factors must be identified and articulated.

*Verizon Pa. Inc. v. Workers' Comp. Appeal Bd. (Mills)*, 116 A.3d 1157, 1162 n.3 (Pa. Cmwlth. 2015) (quoting *Dorsey*, 893 A.2d at 194-95 (citations, internal quotations, and brackets omitted)).

Here, on remand, the WCJ found Dr. Izzo's testimony regarding Claimant's examination dates and Claimant's FCE credible. *See* WCJ Remand Dec. at 4 (FOF 8). The WCJ did not deem credible Dr. Izzo's various diagnoses or his opinion that Claimant's ongoing complaints of lumbar radiculopathy are the direct result of her April 30, 2012 work injury because

> Claimant told Dr. Izzo she had recovered from [a] back injury she sustained in 2000; Dr. Izzo reviewed no records referable to the 2000 low back injury; Dr. Izzo reviewed no records from Concentra; Dr. Izzo agreed the May and August 2012 MRI studies did not reveal evidence of disc herniation; and upon physical examination, Dr. Izzo found no evidence of abnormal sensation in the lower extremities, no evidence of abnormal reflexes in the lower extremities, no evidence of an antalgic gait, and no evidence of atrophy in the lower extremities.

WCJ Remand Dec. at 4 (FOF 8).

The WCJ found credible Dr. Freese's testimony that he evaluated Claimant on April 5, 2013, reviewed her April 4, 2013 MRI and performed Claimant's June 11, 2013 surgery. The WCJ concluded that Dr. Freese's testimony was otherwise not credible. Specifically,

> [h]is testimony is not credible that his diagnosis of significant disc injuries to L4-5 and L5-S1 with annular tears and progressive disc protrusions causing a combination of discogenic pain as well as radiculopathy and

13

the surgery he performed are related to the work injury. In so finding, this [WCJ] finds it significant that Dr. Freese only reviewed the April 4, 2013 MRI prior to the surgery and did not review additional medical records until he prepared for his deposition; he reviewed no records relative to Claimant's 2000 back injury; Claimant has a history of smoking and he agreed smoking is associated with disc desiccation; he agreed the 2012 MRIs showed no evidence of disc herniations; he did not identify any abnormal reflexes or evidence of atrophy in the lower extremities upon his physical examination; and he testified that the comprehensive review of the medical records are consistent with the findings he made, but when asked about medical records that documented findings that were inconsistent with his examination, he testified that records documenting inconsistencies would not be relevant.

WCJ Remand Dec. at 4-5 (FOF 9).

The WCJ found all of Dr. Kovalsky's testimony credible, explaining:

His testimony is credible that he did not find evidence of any residual lumbosacral sprain and strain or contusion, and Claimant was capable of performing a light[-]duty position as of the date of his examination. His testimony is credible that Claimant had not fully recovered from the April 30, 2012 work injury as of the time of his examination. In finding the testimony of Dr. Kovalsky credible, this [WCJ] finds it significant that . . . his examination was essentially benign and did not reveal any clinical evidence of neurologic deficit or lumbar radiculopathy; . . . his clinical findings were consistent with the findings of Dr. Solomon at Concentra and Dr. Simon, both of whom found no evidence of neurologic deficit or lumbar radiculopathy; his clinical findings were consistent with the results of the May and August 2012 lumbar MRI studies which revealed no evidence of disc herniation; and his diagnosis was supported by the testimony of Dr. McCarren who opined the EMG data is insufficient to support a diagnosis of lumbar radiculopathy.

WCJ Remand Dec. at 5 (FOF 10).

The WCJ also found all of Dr. Kahanovitz's testimony credible, stating:

In finding his testimony credible, this [WCJ] notes that Dr. Kahanovitz . . . has performed procedures similar to the one that Dr. Freese performed on Claimant; his clinical findings revealed no evidence of neurologic deficit or lumbar radiculopathy; his inability to detect clinical evidence of neurologic deficit and lumbar radiculopathy is consistent with and corroborated by the examination findings reported months earlier by Dr. Kovalsky; his physical examination findings were consistent with the clinical findings reported by Dr. Solomon and Dr. Simon, both of whom examined Claimant soon after her work injury; the May and August 2012 lumbar MRIs revealed no evidence of lumbar disc herniation; he found evidence of symptom magnification consistent with that identified by Dr. Kovalsky during his October 12, 2012 examination; he credibly explained that Claimant's 2012 MRI findings are consistent with degenerative changes and do not reveal evidence of nerve root involvement; and he credibly explained why the findings on the April 2013 MRI study would not be related to the work injury.

WCJ Remand Dec. at 5-6 (FOF 11).

In addition, the WCJ found all of Dr. McCarren's testimony credible, adding:

In finding the opinion of Dr. McCarren credible, this [WCJ] notes . . . he offered a thorough explanation of how and why the [November 26, 2012] EMG study was incomplete and did not support a diagnosis of lumbar radiculopathy; and his conclusion that the study did not support a diagnosis of radiculopathy is consistent with the clinical examinations of Dr. Kovalsky and Dr. Kahanovitz, both of whom found no evidence of lumbar radiculopathy.

WCJ Remand Dec. at 6 (FOF 12).

The WCJ further found:

13. The testimony of Dr. Kahanovitz is accepted over the contrary testimony of Dr. Freese for several reasons. Claimant told Dr. Freese she was pain free prior to the work injury, whereas Dr. Kahanovitz noted that the July 24, 2012 report of [another physician] specified that Claimant had a

15

history of chronic low back pain. Dr. Freese testified that Claimant's clinical examinations had been consistent since the injury and were consistent with his examination, yet when confronted with evidence to the contrary he testified that such inconsistencies were irrelevant. The testimony of Dr. Freese that the condition of Claimant's lumbar spine progressed over time is contradicted by the fact that the August 6, 2012 MRI findings were similar to the May 2012 study. Dr. Freese only reviewed the April 2013 MRI at the time of his initial examination of Claimant, and did not review additional medical records until he was preparing for his deposition. The testimony of Dr. Kahanovitz is consistent with the credible testimony of Dr. McCarren that the EMG study includes insufficient data to support a lumbar radiculopathy.

14. The testimony of Dr. Kovalsky and the testimony of Dr. McCarren is accepted over the testimony of Dr. Izzo regarding the nature of Claimant's injury. Dr. Kovalsky is a board certified orthopedic surgeon whereas Dr. Izzo is a physiatrist. Dr. Izzo agreed the May and August 2012 MRI studies did not reveal evidence of a disc herniation. Dr. Izzo agreed that the examinations performed by [Claimant's doctors after the work accident] found no evidence of nerve root involvement or lumbar radiculopathy. Dr. Izzo agreed he found no evidence of abnormal sensation, no evidence of abnormal reflexes, no evidence of an antalgic gait, and no atrophy on physical examination. Dr. McCarren's analysis and conclusions relative to the EMG study are consistent with Dr. Kovalsky's physical examination findings and conclusions.

WCJ Remand Dec. at 6-7 (FOFs 13-14).

Neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations. *Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g)*, 771 A.2d 1246 (Pa. 2001). On remand, the WCJ summarized all of the medical testimony and adequately explained her credibility determinations. Based upon its review of the record evidence and, with the WCJ's role as factfinder in mind, the Board upheld the WCJ's findings.

16

Because this Court may not reweigh the evidence or the WCJ's credibility determinations, and must view the evidence in a light most favorable to Employer, after a thorough review of the record, we hold that the Board properly concluded that the WCJ issued a reasoned decision, upheld the WCJ's credibility determinations on remand, and affirmed the WCJ's grant of Employer's Termination Petition.

## 3. Litigation Costs

Claimant also argues that the Board erred by affirming the WCJ's decision denying Claimant reimbursement for Dr. McCarren's and Dr. Kahanovitz's depositions. She specifically asserts that the issue of litigation cost reimbursement should be determined based upon *all* evidence used relative to the issue on which she prevailed, and not just the evidence found *credible* in relation to that issue.

Section 440(a) of the Act[10] provides, in relevant part:

> In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, . . . the employe . . . in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings[.]

77 P.S. § 996(a). Moreover, Section 422(a) of the Act requires that "all findings of fact shall be based upon sufficient competent evidence to justify same." 77 P.S. § 834. The WCJ cannot disregard competent evidence without a reasonable explanation or without specifically discrediting it.

---

[10] Added by Section 3 of the Act of February 8, 1972, P.L. 25.

Here, Employer accepted that Claimant sustained a work-related lumbar strain on April 30, 2012. In her claim petition, Claimant sought partial disability benefits from April 30, 2012 to July 16, 2012, and total disability benefits thereafter. Claimant prevailed on her claim petition for periods that she was disabled due to her work injury between April 30, 2012 and June 6, 2013. Claimant did not succeed in proving that the neurological deficit or bilateral lumbar radiculopathy her doctors claimed prevented her from working after June 6, 2013 were related to her April 30, 2012 work injury. Accordingly, the WCJ denied that Claimant's work-related disability continued after June 6, 2013.

> The *Schock I* Court summarized:
>
> As to Dr. McCarren's deposition, the WCJ found it 'did not negate the fact that [Claimant] injured her low back on April 30, 2012[,] nor did it negate the fact that she was entitled to [WC] benefits for various periods of time in 2012 and 2013.' WCJ Decision, 10/21/2015, at 4; [FOF] 8. The WCJ further found '[Dr. Kahanovitz's] testimony confirmed that Claimant sustained a work-related injury in April of 2012 in the nature of a lumbar strain, thereby supporting Claimant's [c]laim [p]etition in part.' WCJ Decision, 10/21/2015, at 5; [FOF] 9.

*Schock I*, slip op. at 14. The *Schock I* Court agreed with the Board that Claimant was not entitled to reimbursement for Dr. McCarren's deposition costs because that deposition was not related to the parts of the claim petition upon which Claimant prevailed. *See Schock I*. This Court further concurred that Claimant was not entitled to be reimbursed for Dr. Kahanovitz's deposition costs because his testimony confirmed Claimant's accepted work injury, which was not contested. *See id.* Notably, the *Schock I* Court only vacated the Board's decision reversing the WCJ's reimbursement cost award for those depositions because, if the WCJ was to change

18

her decision and deny the Termination Petition on remand,[11] Claimant could be entitled to such costs.

On remand, the WCJ again granted the Termination Petition but, this time, declined to award Claimant costs related to Dr. McCarren's and Dr. Kahanovitz's depositions, "[d]ue to the granting of the Termination Petition[.]" WCJ Remand Dec. at 7. The WCJ deemed credible Dr. McCarren's and Dr. Kahanovitz's testimony that Claimant did not suffer from lumbar radiculopathy related to her work injury that resulted in her disability after June 6, 2013. Neither Dr. McCarren nor Dr. Kahanovitz refuted the claims on which Claimant prevailed – that Claimant suffered a work-related lumbar strain on April 30, 2012 that led to various periods of disability through June 6, 2013. Accordingly, this Court adopts the *Schock I* Court's reasoning and likewise concludes that the Board properly upheld the WCJ's conclusion that Claimant is not entitled to costs related to Dr. McCarren's and Dr. Kahanovitz's depositions.

Based upon the foregoing, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[11] The *Schock I* Court was cognizant that, on remand to explain the rationale for her credibility determinations, the WCJ was not precluded from reversing her original decision. *See Reinert v. Workers' Comp. Appeal Bd. (Stroh Cos.)*, 816 A.2d 403 (Pa. Cmwlth. 2003).

<u>IN THE COMMONWEALTH COURT OF PENNSYLVANIA</u>

Sarah Schock,                      :

               Petitioner          :

                                       :

          v.                        :

                                       :

Workers' Compensation Appeal      :

Board (Brown's Super Stores t/a       :

Shop-Rite),                       :          No. 478 C.D. 2019

               Respondent      :

<u>O R D E R</u>

AND NOW, this 12th day of December, 2019, the Workers' Compensation Appeal Board's March 26, 2019 order is affirmed.

_____

ANNE E. COVEY, Judge