### Janice DONAHAY, Petitioner

v.

### WORKERS' COMPENSATION APPEAL BOARD (SKILLS OF CENTRAL PA, INC.), Respondent.

Commonwealth Court of Pennsylvania.

Submitted Sept. 5, 2014.

Decided Feb. 4, 2015.

Gregory M. Strouse, Lock Haven, for petitioner.

Harry J. Klucher, Pittsburgh, for respondent Skills of Central PA, Inc.

BEFORE: BERNARD L. McGINLEY, Judge, and MARY HANNAH LEAVITT, Judge, and P. KEVIN BROBSON, Judge.

OPINION BY Judge LEAVITT.

Janice Donahay (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) suspending her disability benefits. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) denying Claimant partial disability benefits even though she was earning less than her pre-injury wages when she returned to work. Because Claimant's loss of earnings was not attributable to her work injury but, rather, to economic conditions, the WCJ concluded she was not entitled to partial disability benefits. Finding no error, we affirm.

On February 26, 2011, Claimant injured her right arm while working as a team leader and a residential services assistant for Skills of Central PA, Inc. (Employer). Claimant and Employer executed an Agreement for Compensation describing the injury as a ruptured right biceps and providing for payment of total disability benefits in the amount of $547.04 per week based on an average weekly wage of $816.48. Reproduced Record at 1a (R.R.——).

In August 2011, Claimant returned to her job, with restrictions, earning less than her pre-injury average weekly wage. Claimant and Employer executed a Supplemental Agreement modifying Claimant's benefits from total disability to the partial disability rate of $187.13 per week.

On February 6, 2012, Sanjiv Naidu, M.D. did an independent medical examination of Claimant and opined that she had fully recovered from her work injury and could perform her pre-injury job without restrictions. Employer filed a petition seeking to terminate Claimant's workers' compensation benefits as of February 6, 2012. In the alternative, Employer sought a suspension of benefits as of March 8, 2012, alleging that even if Claimant were not fully recovered, she was fully capable of doing her pre-injury job. Claimant filed an answer denying the material allegations of both petitions.[1]

The petitions were assigned to a WCJ, who held a hearing. Both Claimant and Employer appeared and presented evidence.

Claimant testified that Employer operates a group home for mentally challenged adults located in Howard, Pennsylvania, where three male clients reside. At the time of her injury, Claimant was working in the group home as a team leader and as a residential services assistant. A residential services assistant cleans, cooks, and helps the clients with all activities of daily living. The team leader oversees the other residential services assistants; prepares the work schedules; does reports for the home; and schedules medical appointments for the clients.

Claimant described her February 2011 work injury as follows. One of the clients, who weighs approximately 240 pounds, would not walk without hanging on Claimant's arm. After two weeks of this, Claimant noticed a ball in the area of her right biceps. Claimant underwent surgery in June 2011 and returned to work as a residential services assistant in August 2011 with restrictions from her doctor on the

amount of weight she could lift, push and pull. Claimant testified that the restrictions did not affect her ability to do her job. The client was no longer hanging on her arm when he walked because his leg problem had resolved. None of the clients living in the group home have physical disabilities and all of them are fully ambulatory. In October 2011, Claimant also resumed her duties as team leader, a position that involves more paperwork and less client interaction.

Claimant disagreed with Dr. Naidu's determination that she fully recovered as of February 2012. Claimant acknowledged that Employer provided her with a Notice of Ability to Return to Work and a letter requesting that she resume her full-duty job as of March 2012. Claimant is permitted to lift up to a maximum of 50 pounds, and she does not feel capable of exceeding that. Claimant experiences pain in her right biceps when lifting things or if she works too many hours. She treats her muscle pain with a medicated cream and, on occasion, with Vicodin.

Claimant testified that she is essentially doing the same job she had when she was injured. One day a week is devoted to paperwork. The remainder of the week, she cares for clients. Her restrictions have not impeded her ability to perform her regular duties. She has not been asked to do anything that is beyond her doctor's restrictions. If there were something that Claimant could not lift, she would simply leave it for another staff member. However, Claimant noted that should a client decide not to walk, she would have to call another staff member for assistance. Likewise, she would not be able to catch a falling client or be able to

1. Claimant filed a penalty petition because Employer had failed to pay benefits on time for approximately one month. The WCJ awarded a ten percent penalty on the delayed payments. The penalty award is not part of the present appeal.

help him up. Claimant acknowledged, however, that if a client falls, the protocol is to call 911 for assistance. Claimant also noted that were Employer to assign her to fill in at another home where a client was in a wheelchair, she could not care for that client.

■ Claimant testified that she sets the work schedule for herself and the other residential services assistants assigned to the group home where she works. Her hourly wage is higher now than when she was injured.[2] Despite that fact, Claimant has been receiving partial disability benefits from Employer because she is not working as many hours as before she was injured. A regular work week is 40 hours. Prior to Claimant's injury, she was working 80 to 85 hours per week because the group home was short-staffed.[3] Claimant testified that her treating physician has limited her to working no more than 45 hours per week and, thus, she does not schedule herself for more than 45 hours. Further, Claimant believes that she could not work more than 45 hours a week because it would be too taxing on her right arm. Claimant acknowledged that due to funding cuts, Employer has limited the amount of overtime available to all employees.

Claimant presented the deposition testimony of Paul R. Sensiba, M.D., a board certified orthopedic surgeon who began treating Claimant's work injury on March 2, 2011. Claimant's right arm had a visible "Popeye deformity," and she complained of pain and weakness in the area. R.R. 223a; Notes of Testimony, November 15, 2012, at 16. Based on a physical examination and an MRI, Dr. Sensiba diagnosed a rupture of the long head biceps tendon, on which he did surgery on June 24, 2011.

As of August 2, 2011, Claimant was improving but had a slight recurrence of the Popeye deformity because some of the surgical re-tensioning of the biceps tendon had been lost. Dr. Sensiba released Claimant to return to light-duty work with no lifting over 15 pounds. Over time, Claimant improved, and Dr. Sensiba increased Claimant's functional ability, releasing her to lifting up to 20 pounds on October 27, 2011, and up to 30 pounds on January 9, 2012. Dr. Sensiba opined that Claimant has not fully recovered from her work injury, but she reached maximum medical improvement as of March 2012. After an April 26, 2012, functional capacity evaluation, Dr. Sensiba released Claimant to lift up to a maximum of 50 pounds with frequent lifting; carrying up to 25 pounds; occasional lifting from waist to shoulder up to 25 pounds; occasional lifting from shoulder to overhead of 20 pounds; and no lifting greater than two pounds overhead with the right arm. Dr. Sensiba reviewed the job descriptions for team leader and residential services assistant and opined that Claimant could not do either of those jobs without weight restrictions. Dr. Sensiba testified that he did not limit the amount of hours that Claimant could work. As of July 2012, Dr. Sensiba felt that Claimant needed no more medical treatment for her work injury.

Employer placed written job descriptions for residential services assistant and team leader into evidence. In both positions, employees are expected to lift or carry an average of 30 pounds and the maximum is 50 pounds. Likewise, employ-

2. Claimant's hourly rate was $11.43 and is now $11.66.

3. Overtime earnings must be included in the calculation of the claimant's average weekly wage. *Harper & Collins v. Workmen's Compensation Appeal Board (Brown)*, 543 Pa. 484, 672 A.2d 1319, 1322 (1996).

ees are expected to push or pull 145 pounds and the maximum is 180 pounds.

Employer's Human Resources Administrator, Teresa Burbidge, testified. She explained that Employer is a State-funded organization that runs 85 group homes across 17 counties for individuals with mental disabilities. The group homes are staffed 24 hours a day, 7 days a week. Burbidge acknowledged that Claimant had been working an unusual amount of overtime at the time she was injured. Burbidge explained that those hours were needed until Employer could hire and train additional staff. Burbidge testified that after Claimant's injury, Employer experienced significant funding cuts. This required Employer to impose limits on overtime hours, which it did by hiring additional staff to work at the straight pay rate. Before Claimant was injured, there were two staff members working at the Howard group home, and since July 2011, it has had six staff members. Burbidge acknowledged that Claimant's available overtime is limited, but it was her choice to schedule herself for no more than 45 hours. Burbidge testified that Dr. Sensiba's weight restrictions do not affect Claimant's ability to do her job because the clients in the Howard group home are independent and require little direct care. Team leaders do more paperwork than direct care.

Employer also presented the testimony of Christine Larimer, the Residential Director in Centre County. Larimer testified that an employee would only have to push and pull from 145 pounds up to 180 pounds if a client were in a wheelchair; there are no wheelchair-bound clients at Claimant's group home. Larimer testified that Claimant's lifting restrictions were irrelevant to her ability to do her job. Claimant can schedule other employees to do tasks she believes she cannot do. Further, if a client were to fall and have difficulty getting up, Employer's protocol is to call an ambulance and have the client examined at the hospital. Larimer acknowledged that if a staff member does not report for work and Claimant cannot find a replacement, Claimant must fill in for that employee. Although Claimant must be available to cover other group homes, where needed, this has never happened. Claimant has not complained to Larimer that she cannot perform her job.

Larimer testified that a regular work week is 40 hours and that Employer prefers that employees not work more than 16 hours of overtime per week unless absolutely necessary.

The WCJ accepted as credible the testimony of Dr. Sensiba over that of Dr. Naidu.[4] The WCJ credited Claimant's testimony except for her claim that she was limited on the number of overtime hours she could work because it was not supported by Dr. Sensiba's medical opinion. The WCJ also accepted as credible the testimony of Burbidge and Larimer.[5]

The WCJ found that in spite of some residual pain and weakness, Claimant returned to her pre-injury job with reasonable weight lifting restrictions. The WCJ also found that Claimant's residual impairment has not resulted in a loss of earning power. The extraordinary overtime that Claimant had been working was temporary because since then Employer has hired

---

4. The record includes the deposition testimony of Dr. Naidu, who opined that Claimant fully recovered and could work without restrictions as of February 6, 2012.

5. The WCJ is the ultimate fact finder and has complete authority over questions of credibility. *Davis v. Workers' Compensation Appeal Board (City of Philadelphia),* 753 A.2d 905, 909 (Pa.Cmwlth.2000).

additional staff for the group home. Claimant's current loss of earnings stems from her self-imposed limits on overtime and Employer's limit on overtime for all of its employees. The WCJ explained as follows:

As a Team Leader/[Residential Services Assistant], [Claimant] is capable of scheduling herself to be able to work as many hours as any similarly situated fellow employee. If there are any aspects of the positions which would not fall within the restrictions as set by Dr. Sensiba, she has the ability to schedule around that. Accordingly, presently, any difference between [Claimant's] present earnings, and her pre-injury earnings, has no causal relationship whatsoever to her work injury. There is no dispute between the testimony of [Claimant], Ms. Burbidge, and Ms. Larimer, that the basis for [Claimant's] high time of injury average weekly wage was solely due to the highly unusual situation that the one home which [Claimant] was working in, was severely understaffed at the time of her injury. Due to both economic constraints and intended normal business practices, since the time of the injury, and with no relationship to the injury whatsoever, that situation has now been fairly rectified, resulting in reduced overtime for [Claimant], as well as other Skills employees staffing that home. Under these circumstances where [Claimant's] earning power is no longer affected by her work related injury, she is no longer entitled to partial disability benefits, even though her earnings may not match her pre-injury earnings.

6. Employer did not appeal the denial of its termination petition.

7. This Court's review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were

WCJ Decision, April 5, 2013, at 15–16; Finding of Fact No. 15.

Accordingly, the WCJ denied the termination petition but suspended Claimant's disability benefits as of March 8, 2012, concluding that Employer met its burden of proving that Claimant's work injury was not causing a loss of earning power. Alternatively, the WCJ concluded that a suspension was warranted because Claimant's wages combined with partial disability benefits would exceed the current wages of fellow employees in employment similar to that in which Claimant was engaged at the time of her injury. Claimant appealed the suspension of her benefits, and the Board affirmed.[6] Claimant then petitioned for this Court's review.[7]

On appeal, Claimant argues that the Board erred. Claimant contends that because she has suffered a loss of wages after returning to work and is under physical restrictions, her disability benefits should not have been suspended. Claimant asserts that both the WCJ and the Board erroneously relied upon case law that is distinguishable and ignored more pertinent precedent. Claimant argues that the Board also erred in refusing to address Claimant's appeal of the WCJ's alternative grant of a suspension based on the wages of similarly situated coworkers.

■ Under workers' compensation law, the term "disability" is synonymous with loss of earning power. *Landmark Constructors, Inc. v. Workers' Compensation Appeal Board (Costello)*, 560 Pa. 618, 747 A.2d 850, 854 (2000). Section 306(b)(1)

violated, whether constitutional rights were violated or an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n. 6 (Pa.Cmwlth.2012).

of the Workers' Compensation Act[8] (Act), provides that a worker whose injury has decreased his earning power is entitled to partial disability benefits, which amount to "sixty-six and two-thirds per centum of the difference between the [pre-injury average weekly wage] and the earning power of the employe thereafter[.]" 77 P.S. § 512(1).[9] Section 306(b)(1) limits partial disability to that "caused by the compensable injury." 77 P.S. § 512(1). A claimant whose post-injury earnings are less than the pre-injury earnings is not automatically entitled to partial disability benefits. *Harle v. Workmen's Compensation Appeal Board (Telegraph Press, Inc.)*, 540 Pa. 482, 658 A.2d 766, 769 (1995). If the reduction in earnings is not tied to a loss of earning power attributable to the work injury, no disability benefits are due. *Id.*

In *Harle*, 658 A.2d 766, the claimant injured his left thumb while working for his employer, a printing company. By the time the claimant's doctor released him to return to his pre-injury job without restrictions, claimant's employer had gone out of business. The claimant secured a pressman job with another printing company, but at a wage of $2.00 less per hour than he had earned with his time-of-injury employer. This Court held that because of this wage disparity, claimant was entitled to partial disability benefits.

Our Supreme Court disagreed, explaining that the difference between post-injury and pre-injury wages does not automatical-

ly entitle a claimant to partial disability benefits. Only if the wage loss is "caused by a work-related injury" is the claimant entitled to disability. *Harle*, 658 A.2d at 769. Because the claimant had residual physical impairment from the work injury, he was entitled to a suspension of benefits, but not partial disability. This was because his loss of earnings was "due to factors other than the injury to his thumb." *Id.* at 770.[10]

In affirming the WCJ's suspension of benefits in the instant case, the Board relied on *Harle* and also on *Trevdan Building Supply v. Workers' Compensation Appeal Board (Pope)*, 9 A.3d 1221 (Pa.Cmwlth.2010), a case involving wage loss occasioned by elimination of overtime. In *Pope*, the claimant ruptured his biceps tendon while working as a yardman. Following surgery, he returned to his pre-injury job in March 2007, and his benefits were suspended. The claimant's treating orthopedic surgeon imposed no work restrictions, but his family physician limited him to no lifting over 50 pounds and opined that he might need accommodations should his arm become painful after repetitive use. The WCJ found that the claimant occasionally required assistance with some of his job duties, which was also the case before the work injury. The claimant had returned to work at his pre-injury hourly wage but experienced a loss of earnings because he was no longer able to

---

8. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 512(1).

9. Section 306(b)(1) sets forth the schedule of compensation, in relevant part, as follows: For disability partial in character caused by the compensable injury or disease [except for specific loss injuries] sixty-six and two-thirds per centum of the difference between the wages of the injured employe, as defined in section 309, and the earning power of the employe thereafter[.]

77 P.S. § 512(1).

10. The Supreme Court subsequently clarified that *Harle* precludes an award of partial disability benefits in the case of "a residually injured employee *who returns to identical employment* " and experiences a loss of earnings due to his employer's economic circumstances. *Landmark Constructors,* 747 A.2d at 857 (emphasis in original).

work overtime. The claimant sought a reinstatement of partial disability benefits because of his loss of earnings.[11]

The WCJ awarded partial disability benefits from March 2007 through September 30, 2007, because during that time the claimant lost the opportunity to work overtime hours because of the work injury. However, the WCJ suspended benefits as of October 1, 2007, when the employer eliminated all overtime because of a "downturn in the economy that required a restructuring of [the] [e]mployer's workforce." *Pope,* 9 A.3d at 1223. The Board affirmed the award of partial disability benefits but reversed the suspension, concluding that the reason for the claimant's wage loss was not clear.

This Court upheld the award of partial disability benefits through September 30, 2007, but reversed the Board on the suspension. We concluded that as of October 1, 2007, the claimant's loss of earnings was unrelated to the work injury. Noting that the claimant had returned to work "without specific restrictions," only possible lifting restrictions, we explained that "claimants who return to their time-of-injury jobs with restrictions that do not require a modification of their duties are considered 'without restriction[.]' " *Id.* at 1224 (quoting *Folk v. Workers' Compensation Appeal Board (Dana Corporation),* 802 A.2d 1277, 1280 (Pa.Cmwlth.2002)).[12] We further explained that even if an "accommodation" could be construed as a restriction, it was irrelevant. Because the claimant was doing his regular job and his loss of wages as of October 1, 2007, was due to economic circumstances, we held that the claimant's disability benefits should be suspended as of that date.

Claimant argues that *Harle* and *Pope* are distinguishable because Claimant has residual impairment from her work injury, and she did not return to her pre-injury job without restrictions. Claimant argues that *Harper & Collins v. Workmen's Compensation Appeal Board (Brown),* 543 Pa. 484, 672 A.2d 1319 (1996) is directly on point, and it compels the grant of partial disability.

In *Harper & Collins,* the claimant, who could not do her pre-injury job, returned to a light-duty position at the same hourly rate. The claimant worked overtime prior to her injury but not after the injury, resulting in a loss of earnings. The parties stipulated that the claimant could not work overtime because her employer had eliminated overtime for all employees. Our Supreme Court held that because the claimant was unable to resume her pre-injury position and was limited to a light-duty position, she was entitled to partial disability benefits even though the loss of

---

**11.** Although *Pope* deals with a reinstatement petition, not a suspension petition, its rationale is nevertheless instructive.

**12.** In *Folk,* the claimant returned to his pre-injury job with a 50–pound weight-lifting restriction and benefits were suspended. Despite the restriction, the claimant was able to perform his regular job with no job modification. The claimant was subsequently laid off due to economic conditions and petitioned for reinstatement of benefits. A claimant who returns to a modified position with restrictions and is laid off is entitled to a presumption that his loss of earning power is causally related to the work injury. On the other hand, a claimant who returns to his pre-injury job without restrictions and is laid off is not entitled to the presumption and must prove the causal connection. Observing that the facts in *Folk* represent "a hybrid situation," this Court held that the claimant was to be treated "as though [he] returned without restriction" because his "weight-lifting restriction was irrelevant to his ability to perform his time-of-injury position." *Folk,* 802 A.2d at 1280. Thus, the claimant was not entitled to a presumption and failed to establish the causal connection necessary for reinstatement of benefits upon his layoff.

overtime was the result of economic conditions.[13] It explained that its holding applies to a claimant who is able "to return to work in some capacity although unable to perform the duties required by his or her pre-injury position." *Harper & Collins*, 672 A.2d at 1323–24.[14]

Claimant argues that, as was held in *Harper & Collins*, she is entitled to partial disability benefits because she returned to work with restrictions. The lack of overtime is irrelevant. However, this Court addressed this very argument in *Pope* and concluded that "*Harper & Collins* is not controlling" because it "was decided 'in the context of an employee who was reassigned to a light-duty position.'" *Pope*, 9 A.3d at 1225 (quoting *Capper v. Workers' Compensation Appeal Board (ABF Freight Systems, Inc.)*, 826 A.2d 46, 51 (Pa.Cmwlth.2003)).[15]

▮▮▮ As in *Pope*, Claimant is doing her pre-injury job, not a "light duty position." *Id.* The Board applied, appropriate-

ly, the legal principles of *Harle* and *Pope* to this case. *Pope* teaches that medical restrictions are not relevant if they do not require a modification of the claimant's pre-injury job duties. Claimant argues that her medical restrictions distinguish her case from *Pope*. We disagree. Her medical restrictions do not affect her ability to perform her regular work duties. Claimant acknowledged that she has been doing her regular job and has not been asked to do anything that exceeds Dr. Sensiba's restrictions.[16] Further, should anything exceed Dr. Sensiba's restrictions, Claimant can schedule around it. The situation that caused her injury, *i.e.*, the client hanging on her arm and refusing to walk, no longer exists. The only duties Claimant identified that might exceed her restrictions were hypothetical because she does not work with any wheelchair-bound clients. Further, Claimant is expected to call 911 should a client fall. In sum, Claimant is doing her pre-injury job without modification.

**13.** Although decided after *Harle*, the Supreme Court in *Harper & Collins* did not mention *Harle*.

**14.** Justice Castille dissented, expressing his view that the claimant was not entitled to partial disability benefits because her loss of earnings was not caused by her work injury and that the majority's holding "leads to an absurd result," *i.e.*, the claimant received benefits for overtime hours that she *might* have worked had the employer financially been able to offer her overtime. *Harper & Collins*, 672 A.2d at 1324 (Castille, J., dissenting). Indeed, the majority in *Harper & Collins* appears to stray from the concept announced in *Harle* that partial disability benefits are payable only if the work injury causes a loss of earning power, not in any case where the post-injury earnings are less than the pre-injury earnings.

**15.** Although the issue in *Capper* was the reasonableness of the employer's contest, the decision includes the following discussion of *Harper & Collins*:

> While the question of the unavailability of overtime due to economic conditions has been addressed in *Harper & Collins v. Workmen's Compensation Appeal Board (Brown)*, 543 Pa. 484, 672 A.2d 1319 (1996), it was only addressed in the context of an employee who was re-assigned to a light-duty position. The issue of whether an employee who returns to his original position, full-time, with no restrictions, is entitled to receive workers' compensation benefits at a higher rate because overtime was available at the time of his injury, but not at the time of his return to work, has yet to be determined by the Pennsylvania Supreme Court. *Capper*, 826 A.2d at 51.

**16.** Claimant argues that her restrictions "were clearly significant and impacted her ability to perform her pre-injury job duties." Claimant's Brief at 19. However, Claimant's testimony before the WCJ does not support this argument.

Claimant earns a higher hourly wage post-injury, and her work injury does not limit the number of overtime hours she can work. Claimant's loss of earnings has resulted from the addition of staff and the limitation on overtime for all employees because of funding cuts, not her work injury. Therefore, the Board did not err in granting Employer's request to suspend her benefits.

Claimant also argues that the Board erred by declining to address Claimant's challenge to the WCJ's alternative stated reason for suspending her benefits. The WCJ concluded that aside from the reason for the loss of earnings, Claimant's benefits also must be suspended because her post-injury wages combined with her partial disability benefits would exceed the wages of similarly situated employees in violation of Section 306(b)(1) of the Act.[17] Claimant asserts that Employer's evidence was legally insufficient to satisfy its burden of establishing a class of co-workers similarly situated with Claimant.

Because the Board affirmed the WCJ's grant of a suspension for the reason that Claimant's loss of earning power was not due to her work injury, it did not address Claimant's additional argument regarding the WCJ's alternative reason for suspending benefits. Likewise, the Court need not reach the issue. As we noted in *Pope*, 9 A.3d at 1226 n. 4, because the Claimant's loss of earnings was caused by economic circumstances, and not the work injury, the issue of similarly situated employees

under Section 306(b)(1) was moot. We reach the same conclusion here.

For the above-stated reasons, we affirm the order of the Board.

### ORDER

AND NOW, this 4th day of February, 2015, the order of the Workers' Compensation Appeal Board dated April 30, 2014, in the above captioned matter is hereby AFFIRMED.

---

17. Section 306(b)(1) of the Act provides for partial disability and states in relevant part that:

> [I]n no instance shall an employe receiving compensation under this section receive more in compensation and wages combined than the current wages of a fellow employe in employment similar to that in which the injured employe was engaged at the time of the injury.

77 P.S. § 512(1). The employer must provide information about the wages and overtime, at the time of injury, of other employees doing the same job as the claimant. *Verizon Pennsylvania, Inc. v. Workers' Compensation Appeal Board (Baun)*, 863 A.2d 1247, 1252 (Pa. Cmwlth.2004).