IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cheryl Everson, : 
                Petitioner : 
                 : 
       v. : 
                 : 
Workers' Compensation Appeal : 
Board (Al-Mar RV), :   No. 1821 C.D. 2019
             Respondent :   Submitted: June 19, 2020

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED: August 7, 2020

      Cheryl Everson (Claimant) petitions for review of the November 14, 2019 order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of the Workers' Compensation Judge (WCJ) granting Claimant's claim and review petitions, denying Claimant's penalty petition, and suspending Claimant's benefits. The Board, however, modified the WCJ's decision to reflect a suspension of Claimant's benefits as of September 12, 2016,[1] instead of May 17, 2017, as directed by the WCJ. We now affirm, as modified, the Board's order.

---

[1] The Board, in its opinion, clearly indicated an intent to suspend Claimant's benefits as of September 12, 2016, the date of an independent medical examination of Claimant conducted by David Cooper, M.D., but inadvertently referenced September 16, 2016 as the date of suspension in its order. As such, the Board's order is modified to reflect September 12, 2016, as the date of suspension.

The underlying facts of this case are not in dispute. Claimant worked as an office manager for Al-Mar RV (Employer). Finding of Fact (F.F.) 3, Reproduced Record (R.R.) at 185a. On February 26, 2015, Claimant fell at work and sustained a fracture to her left knee. *Id.* On March 11, 2015, Employer issued a notice of temporary compensation payable, describing Claimant's injury as a left knee fracture resulting from a slip and fall. F.F. 2, R.R. at 185a. On March 20, 2015, however, Employer issued a notice stopping temporary compensation and a notice of workers' compensation denial, alleging that Claimant had not suffered a loss of wages as a result of her accepted work injury and that Claimant had taken herself out of the workplace due to activities detrimental to Employer. *Id.* On March 23, 2015, Employer issued a "medical only" notice of compensation payable accepting liability for medical treatment for Claimant's work-related, left knee injury. *Id.*

In May 2016, Claimant filed a claim petition against Employer seeking full disability ongoing from February 26, 2015, together with the payment of medical bills and counsel fees. F.F. 3, R.R. at 185a. Claimant also filed a review petition seeking to expand the description of her work injury to include chondromalacia and post-traumatic arthritis in her left knee, as well as a penalty petition due to Employer's alleged failure to pay her reasonable and necessary medical expenses. F.F. 3, 11(c), R.R. at 185a, 192a. Employer filed answers to all of Claimant's petitions, admitting that Claimant did not return to work, although not due to her work injury, and admitting that Claimant was entitled to payment for medical bills related to her left knee fracture. F.F. 3, R.R. at 185a.

The WCJ conducted multiple hearings relating to Claimant's petitions, the first occurring on June 1, 2016. F.F. 4, R.R. at 185a. At this hearing, Claimant

2

described her job duties as Employer's office manager, which included performing inventories of Employer's expansive recreational vehicle (RV) lot and parts department, preparing payroll, reviewing bank statements, and lifting and carrying boxes of documents and copy paper. F.F. 4(a), R.R. at 185a-86a; Notes of Testimony (N.T.), 6/1/16, at 7-8. Claimant discussed her February 26, 2015 work injury, indicating that she slipped on black ice, fell and shattered her left kneecap, after which she was transported by ambulance to a local hospital. F.F. 4(c), R.R. at 186a; N.T., 6/1/16, at 9. Claimant eventually underwent surgery on March 10, 2016, that required wiring to reconfigure her kneecap, followed by two months of physical therapy.[2] F.F. 4(d), R.R. at 186a; N.T., 6/1/16, at 10-11. Claimant rated her daily pain level at 6 out of 10, with increased pain walking up and down stairs, as well as occasional numbness that would shoot down her left knee and into her calf. F.F. 4(f), R.R. at 186a; N.T., 6/1/16, at 13-14. Claimant noted, however, that she was not taking any pain medication at that time. F.F. 4(f), R.R. at 186a; N.T., 6/1/16, at 15.

On cross-examination, Claimant acknowledged that she had been terminated by Employer shortly after her work injury because she was stealing money, for which she had been criminally charged and pled guilty. F.F. 4(g), R.R. at 187a; N.T., 6/1/16, at 19, 21. Claimant stated that Employer paid her regular wages for two weeks after her work injury. F.F. 4(g), R.R. at 187a; N.T., 6/1/16, at 22.

The WCJ conducted another hearing on December 7, 2016. Counsel for the parties stipulated at this hearing that Claimant had been incarcerated for two

---

[2] Claimant noted that beginning on January 5, 2016, she worked for an eye doctor in Hagerstown, Maryland, and described this job as less strenuous than her job with Employer. F.F. 4(e), R.R. at 186a; N.T., 6/1/16, at 12, 13.

months in 2016, followed by a seven-month period of house arrest.[3] F.F. 5, R.R. at 187a; N.T., 12/7/16, at 9-11. Claimant detailed her work history following her termination from Employer, noting that she obtained a job through a temporary agency as an accounts receivable clerk for a trucking company from June 2015 to September 2015, worked as a customer service manager at a Christmas Tree Shop store from September 2015 to January 2016, worked for an eye doctor from January 2016 to June 2016, and, as of the date of the hearing, had been working at a sub shop making sandwiches for 36 to 46 hours per week since September of 2016. F.F. 5, R.R. at 187a; N.T., 12/7/16, at 12-17.

Claimant was cross-examined at a further hearing held on March 22, 2017. Claimant indicated that, as of the date of the hearing, she had been working part-time for the sub shop and had also started a desk job at a biorepository.[4] F.F. 6, R.R. at 187a; N.T., 3/22/17, at 21-22. Claimant noted that she underwent a second surgery on her left knee in June 2016, after which she was released to return to light-duty work. F.F. 6, R.R. at 187a; N.T., 3/22/17, at 24. After reiterating her pre-work injury job duties with Employer, Claimant indicated her belief that she still could not perform the full range of tasks she previously performed, but could likely perform the job with accommodations. F.F. 6, R.R. at 188a; N.T., 3/22/17, at 26-29, 39.

Employer then presented the testimony of Joey Mouse (Mouse), who worked in human resources for Employer. F.F. 7(a), R.R. at 188a; N.T., 3/22/17, at 41. Mouse testified that she had been performing a job similar to Claimant's for the

---

[3] Claimant stated that she was released from incarceration in August 2016. N.T., 12/7/16, at 12.

[4] Claimant explained that the biorepository stores blood samples from drug trials. N.T., 3/22/17, at 22.

last two and a half years and described her job as primarily a desk job with no regular physical requirements, noting that any physical aspects such as moving boxes, carrying paperwork, or retrieving records could be performed by others. F.F. 7(a), R.R. at 188a; N.T., 3/22/17, at 41-46. Mouse also testified to her understanding that Claimant was no longer employed by Employer due to embezzlement, which Mouse herself discovered toward the end of February 2015 or beginning of March 2015. F.F. 7(b), R.R. at 188a; N.T., 3/22/17, at 46. On cross-examination, Mouse admitted that Claimant occasionally sold RVs, which included showing RVs to customers. F.F. 7(c), R.R. at 188a; N.T., 3/22/17, at 49. Mouse also acknowledged that Claimant was paid for two weeks after her work injury. F.F. 7(c), R.R. at 188a; N.T., 3/22/17, at 52.

Employer also presented the testimony of Terri Schmidt (Schmidt), who worked under Claimant since 2012 and subsequently became Employer's office and accounting manager. F.F. 8(a), R.R. at 188a; N.T., 3/22/17, at 53. Schmidt stated that she is currently performing the same job duties Claimant performed prior to the work injury and termination, and described the job as a desk job in a sitting position. F.F. 8(a), R.R. at 189a; N.T., 3/22/17, at 54. Similar to Mouse's testimony, Schmidt indicated that other employees assist her with any incidental physical aspects of the job. F.F. 8(a), R.R. at 189a; N.T., 3/22/17, at 55-56. On cross-examination, Schmidt acknowledged that she did participate in sales while working under Claimant, but explained that Claimant was not required to sell RVs as part of her job and did not receive commissions. F.F. 8(c), R.R. at 189a; N.T., 3/22/17, at 64, 70-71. Schmidt also testified that she was at work the day Claimant fell and was taken to the hospital, and that she reported Claimant's accident to Employer's insurer. F.F. 8(d), R.R. at 189a; N.T., 3/22/17, at 65.

5

In support of her petitions, Claimant presented the deposition testimony of Bruce H. Levin, M.D., who performed an independent medical examination of Claimant on December 6, 2016, at the request of her counsel. F.F. 9(a), R.R. at 189a; N.T., 3/1/17, at 10, Dep. Ex. 2 – December 6, 2016 Report of Dr. Levin. Dr. Levin testified that he was aware of Claimant's work injury and subsequent treatment, including her surgeries, and that she presented with continuing knee pain and left knee weakness which resulted in trouble walking. F.F. 9(a), R.R. at 190a; N.T., 3/1/17, at 18. He noted that Claimant developed chondromalacia and arthritis following her surgeries. F.F. 9(c), R.R. at 190a; N.T., 3/1/17, at 17. He indicated that Claimant could not perform the duties of her pre-injury job, as the job required walking, bending, and carrying, but could perform a sedentary position. F.F. 9(d), R.R. at 190a; N.T., 3/1/17, at 25. He specifically disagreed with the opinion of Employer's medical expert that Claimant could return to light-duty work. F.F. 9(d), R.R. at 190a; N.T., 3/1/17, at 29. On cross-examination, Dr. Levin explained that chondromalacia could be degenerative or traumatic, and that Claimant's condition resulted from her traumatic work injury. F.F. 9(e), R.R. at 190a-91a; N.T., 3/1/17, at 48-51.

In opposition to Claimant's petitions, Employer presented the deposition testimony of David R. Cooper, M.D., who performed an independent medical examination of Claimant on September 12, 2016. F.F. 10(a), R.R. at 191a; N.T., 5/19/17, at 8. Dr. Cooper testified that he was aware of Claimant's work injury and subsequent treatment, including her surgeries, and her ongoing complaints of left knee pain and weakness. F.F. 10(a), R.R. at 191a; N.T., 5/19/17, at 8-9. Upon physical examination, Dr. Cooper observed some atrophy in Claimant's left thigh, swelling in her left knee, and some limitation in range of motion. F.F. 10(a), R.R.

at 191a; N.T., 5/19/17, at 9. He described Claimant's operative report as very comprehensive and detailing a fracture of her left kneecap with significant displacement of the fragments. F.F. 10(a), R.R. at 191a; N.T., 5/19/17, at 11. He explained that Claimant was not fully recovered and suffered from post-traumatic arthritis, thereby rendering her without a fully functional knee. F.F. 10(b), R.R. at 191a; N.T., 5/19/17, at 11-12. Dr. Cooper indicated that he would place restrictions on Claimant in the nature of light-duty work, namely limitations on standing and walking, no lifting greater than 20 pounds, and no squatting or kneeling. F.F. 10(b), R.R. at 191a; N.T., 5/19/17, at 12. Dr. Cooper also described these restrictions as permanent. *Id.*

Dr. Cooper noted that he reviewed the testimony of Mouse and Schmidt from the March 22, 2017 hearing, and given their description of Claimant's position, opined that Claimant could perform the same. F.F. 10(b), R.R. at 192a; N.T., 5/19/17, at 13. Nonetheless, he acknowledged that Claimant would not be able to perform the duties of the pre-injury job as described by Claimant, because such duties would be greater than the light-duty restrictions he placed on her. *Id.*

By decision and order circulated on January 22, 2018, the WCJ granted Claimant's claim and review petitions, but only awarded her benefits for the closed period from February 26, 2015, to May 17, 2017, the date of Dr. Cooper's deposition.[5] WCJ's Order, R.R. at 199a. The WCJ suspended Claimant's benefits during the period of her brief incarceration in 2016 and as of May 17, 2017, due to the WCJ's finding that Claimant's "residual work ability would permit her to perform job duties consistent with those of her successors" and because Claimant's loss of earnings was no longer the result of her work injury but, instead, the result of

---

[5] This appears to be a typographical error, as Dr. Cooper's deposition occurred on May 19, 2017.

her discharge from employment with Employer. *See* WCJ's Analysis, R.R. at 196a. The WCJ further denied Claimant's penalty petition and request for attorney fees, but directed Employer to continue to pay Claimant's causally related medical expenses.

Both Claimant and Employer appealed to the Board, which affirmed the WCJ's decision and order but modified the same to reflect a suspension of benefits as of September 12, 2016,[6] the date of Dr. Cooper's independent medical examination of Claimant. Board's Order, R.R. at 215a. The Board noted that "[i]n other contexts[,] changes in a claimant's benefits status, such as a termination on the basis of full recovery, are effective as of the date of the examination." Board's Decision at 10-11, R.R. at 211a-12a. Claimant thereafter filed a petition for review with this Court solely challenging the Board's modification and requesting that the closed period cease on May 17, 2017, as directed by the WCJ. Petition for Review at 2.

Before this Court,[7] Claimant argues that the Board erred as a matter of law and abused its discretion in modifying the date of suspension of her benefits. We disagree.

Section 413(a) of the Workers' Compensation Act (Act)[8] provides, in pertinent part, as follows:

---

[6] *See* footnote 1, *supra*, regarding date of suspension.

[7] "This Court's review in workers' compensation appeals is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Whitfield v. Workers' Comp. Appeal Bd. (Tenet Health Sys. Hahnemann LLC)*, 188 A.3d 599, 605 n.6 (Pa. Cmwlth. 2018); *see also* Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

[8] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed. . . .

77 P.S. § 772. Under the Act, "the term 'disability' is synonymous with loss of earning power." *Donahay v. Workers' Comp. Appeal Bd. (Skills of Cent. PA, Inc.)*, 109 A.3d 787, 792 (Pa. Cmwlth. 2015) (citation omitted). Thus, "[i]f the reduction in earnings is not tied to a loss of earning power attributable to the work injury, no disability benefits are due." *Id.* at 793.

In the present case, while both Claimant's medical expert, Dr. Levin, and Employer's medical expert, Dr. Cooper, agreed that Claimant continues to suffer residual effects directly related to her original work injury and would be subject to permanent physical restrictions, Claimant does not dispute that she was terminated from her employment shortly after her work injury for theft of funds from Employer. Thus, the WCJ properly limited Claimant's award of benefits to a closed time period and directed that said benefits be suspended. *See, e.g.*, *Harvey v. Workers' Comp. Appeal Bd. (Monongahela Valley Hosp.)*, 983 A.2d 1254, 12 (Pa. Cmwlth. 2009) (holding that the Board did not err in considering a claimant's pre-injury misconduct, which resulted in the claimant's termination, in affirming a WCJ's modification of benefits); *Reyes v. Workers' Comp. Appeal Bd. (AMTEC)*, 967 A.2d 1071 (Pa. Cmwlth. 2009) (holding that the Board did not err in affirming the denial of a claim

petition where the employer immediately terminated the claimant for pre-accident misconduct once the employer learned of the misconduct).[9]

A question remains as to the proper date of suspension. The WCJ suspended Claimant's benefits as of May 17, 2017, the date of Dr. Cooper's deposition. However, the Board modified the suspension date to September 12, 2016, the date of Dr. Cooper's independent medical examination of Claimant. We find no error in this modification.

Claimant devotes a substantial portion of her brief arguing that the Board, in modifying the date of suspension of her benefits, usurped the role of the WCJ by reweighing the evidence and rendering its own credibility findings. The Board took no such action. The WCJ credited the testimony of Dr. Cooper, and the Board's decision neither disturbs this credibility determination nor reweighs the evidence presented before the WCJ. The Board merely relied on Dr. Cooper's credible testimony as requiring an earlier date of suspension of Claimant's benefits than that directed by the WCJ.

During his deposition, Dr. Cooper opined that, as of September 12, 2016, the date of his independent medical examination of Claimant, she could only perform light-duty work within certain physical limitations/restrictions. *See* N.T., 5/19/17, at 12. He also specifically opined that given the job duties as described by Mouse and Schmidt, who were performing Claimant's job, Claimant could perform the same. *See* N.T., 5/19/17, at 13. In other words, Dr. Cooper opined that the duties

---

[9] While these cases highlight the importance of the timeframe of when the claimants' misconduct was discovered by their respective employers in conjunction with the applicable burdens of proof in awarding or modifying benefits, such timeframe is not relevant herein as neither Claimant nor Employer appealed the Board's affirmance of the WCJ's award of benefits for a closed period. As noted above, Claimant's petition for review was limited to her argument that the Board erred in modifying the date of suspension of her benefits.

10

of Claimant's pre-injury job fell within the restrictions he imposed upon Claimant. Moreover, Claimant herself acknowledged that she could likely perform her pre-injury job with the types of accommodations described by Mouse and Schmidt, *see* N.T., 3/22/17, at 39, if not for her termination from employment. A suspension of Claimant's benefits was, thus, appropriate as of the date of Dr. Cooper's independent medical examination of Claimant. We note, as did the Board, that in other contexts involving a change in a claimant's benefit status, the date of the medical examination is determinative. *See*, *e.g.*, *Colagreco v. Workers' Comp. Appeal Bd. (Vanguard Grp. Inc.)*, ___ A.3d ___ (Pa. Cmwlth., No. 788 C.D. 2019, filed May 14, 2020) (affirming termination of benefits as of date of independent medical examination); *Michel v. Workers' Comp. Appeal Bd. (U.S. Steel Corp.)*, 966 A.2d 643 (Pa. Cmwlth. 2009) (same).

Accordingly, the order of the Board is affirmed, as modified to reflect September 12, 2016 as the date of suspension of benefits.

_____
CHRISTINE FIZZANO CANNON, Judge

11

<u>IN THE COMMONWEALTH COURT OF PENNSYLVANIA</u>

Cheryl Everson,                                          :
                        Petitioner                       :
                                                         :
            v.                                           :
                                                         :
Workers' Compensation Appeal                             :
Board (Al-Mar RV),                                       :    No. 1821 C.D. 2019
                        Respondent                       :


<u>O R D E R</u>


            AND NOW, this 7th day of August, 2020, the November 14, 2019 order
of the Workers' Compensation Appeal Board is hereby AFFIRMED, as modified,
to discontinue benefits as of September 12, 2016.


                                    _____
                                    CHRISTINE FIZZANO CANNON, Judge