IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Dalzell,                              :
                          Petitioner              :
                                       :
                  v.                     :   No. 903 C.D. 2023
                                       :
Forest Hills Borough-Allegheny and           :   Submitted: February 6, 2024
Municipal Risk Management Workers'           :
Compensation Pooled Trust (Workers'          :
Compensation Appeal Board),                  :
                    Respondents            :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ELLEN CEISLER, Judge
             HONORABLE STACY WALLACE, Judge


***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED: March 1, 2024


        William Dalzell (Claimant) petitions for review of the Workers'
Compensation (WC) Appeal Board's (Board) July 24, 2023 order affirming the
Workers' Compensation Judge's (WCJ) January 4, 2023 decision granting Forest Hills
Borough's (Employer) Petition to Terminate Claimant's WC benefits (2021
Termination Petition).  On appeal, Claimant contends that the evidence was insufficient
to establish a change in his physical condition since the prior adjudication and that the
doctrine of *res judicata* precludes termination of his benefits.  After review, we affirm.

## I.  Background

        On April 10, 2019, Claimant sustained a lumbar strain while cleaning tree
branch debris during the course and scope of his employment as a maintenance worker
for Employer.  Employer accepted the injury by a Notice of Temporary Compensation

Payable, which was later converted into a full Notice of Compensation Payable by operation of law.

On January 7, 2020, Employer filed a petition to terminate Claimant's WC benefits maintaining that Claimant had fully recovered from his injuries as of November 11, 2019 (2020 Termination Petition). Hearings were held before WCJ William Gallishen (WCJ Gallishen), at which Employer offered the July 7, 2020 deposition of James Cosgrove, M.D. (Dr. Cosgrove), who is board certified in physical medicine and rehabilitation and examined Claimant on November 11, 2019. Claimant testified and offered the deposition of orthopedic surgeon Robert Liss, M.D. (Dr. Liss). By February 23, 2021 decision WCJ Gallishen denied the 2020 Termination Petition based on his determination that Employer failed to demonstrate that Claimant had fully recovered from his work injury. (Reproduced Record (R.R.) at 20a-21a.) WCJ Gallishen found that Claimant's ongoing back pain was a residual of his work injury and that Claimant also sustained a T12 compression fracture as part of his injury, in addition to the lumbar strain. (R.R. at 20a, 24a, 26a.)

On August 24, 2021, Claimant underwent an independent medical examination (IME) conducted by orthopedic surgeon Victor J. Thomas, M.D. (Dr. Thomas), following which Dr. Thomas opined that Claimant had fully recovered from his April 10, 2019 work accident and that he could return to his regular-duty job as a maintenance worker for Employer. He further opined that, based on Claimant's unrelated diagnosis of osteoporosis, he should not perform any significant lifting. (R.R. at 222a-23a.) On September 20, 2021, Employer filed the 2021 Termination Petition based upon Dr. Thomas's conclusion.

Hearings were conducted before WCJ Gerald Yanity (WCJ Yanity) at which Employer presented Dr. Thomas' February 22, 2022 deposition wherein he

testified that, as part of his examination of Claimant, he secured a history from Claimant, reviewed his medical records including his magnetic resonance imaging (MRI) history, obtained updated X-rays from his own office, and reviewed the testimony from the initial round of litigation resulting in WCJ Gallishen's decision. Dr. Thomas indicated that, at the time of the IME, Claimant had not undergone any active treatment for the past two years, although he had regular office visits with Dr. Liss every six months. (R.R. at 68a-70a.) Claimant reported to Dr. Thomas that he suffered from right-sided low back pain and that he had no left-side pain, numbness, or tingling in his legs. Dr. Thomas relayed that Claimant had been diagnosed with osteoporosis after the work injury and that he smoked cigarettes daily, which can delay fracture healing and lead to lower back pain.

As to Claimant's initial diagnosis after the work injury, Dr. Thomas understood that he sustained a lumbar strain and a T12 compression fracture, which he agreed were the appropriate diagnoses. (R.R. at 81a.) Dr. Thomas opined that Claimant had fully recovered from the lumbar strain because he had a normal range of motion and there was no evidence of any muscular spasm. Dr. Thomas acknowledged that WCJ Gallishen had noted in his decision that Claimant's complaints of pain were a result of his lumbar strain. However, Dr. Thomas explained that Claimant's condition had changed as of the IME, in that he observed no evidence of any ongoing lumbar strain. He explained that the recovery time for the type of injury can last anywhere from a couple of days to a few months. Dr. Thomas opined that Claimant's complaint of lower right back pain is not related to the lumbar strain or the T12 compression fracture, which he described as mild and healed, and that it could be a result of the degenerative changes in his back. (R.R. at 82a-86a.) Although Dr. Thomas agreed that Claimant has a mild wedging deformity at the T12 level, he opined that it was not

causing any functional deficit, as Claimant had made a full functional recovery from the T12 compression fracture. (R.R. at 85a.) Dr. Thomas opined that Claimant does not need any further treatment for the lumbar strain or compression fracture and that he could return to work in his regular duty position without the need for restrictions due to his work injury, although Claimant should be restricted from significant lifting because of his osteoporosis, which in his view was inadequately treated. (R.R. at 86a-88a.)

On cross-examination, Dr Thomas agreed that it is not uncommon for individuals who sustain a compression fracture to develop ongoing chronic back pain, but he clarified that the percentage of patients who experience this is fairly low, about ten percent. (R.R. at 101a-103a.) Insofar as WCJ Gallishen attributed Claimant's complaints of pain to the compression fracture, Dr. Thomas opined that while Claimant did initially have pain as a result of the injury, that was no longer the case. (R.R. at 114a-15a.)

Claimant testified that he remained under the care of Dr. Liss, who he saw every six months, and that he was not undergoing any active treatment or taking prescription medication for his condition, which he understood would not improve. (R.R. at 200a.) Claimant attributed his lower right back pain to his work injury and testified that he experiences pain on a daily basis when he sits or stands for too long, or when he bends over to pick up materials. (R.R. at 201a-203a.)

On cross-examination Claimant testified that he is sixty years old, that he periodically takes Tylenol for pain and that he is not in physical therapy. Claimant relayed that he has osteoporosis, that he is treating this condition with vitamins and that he does not treat with a physician for this condition. Claimant relayed that he has

smoked cigarettes for forty years and that he presently smokes about three quarters of a pack per day. (R.R. at 215a.)

Claimant also presented Dr. Liss's April 8, 2002 deposition, wherein Dr. Liss testified he began treating Claimant in May of 2019 and last saw him on April 5, 2020. Claimant continued to complain of pain in the right side of his lumbar spine that is present when he stands for too long without changing position, and that the pain is relieved when he sits or lies down. (R.R. at 160a-61a.) Dr. Liss reported that Claimant's symptoms are stable, that he is at maximum improvement and that he does not anticipate changes in Claimant's condition. Regarding the cause of Claimant's back pain, Dr. Liss opined that the T12 compression fracture subtly changed the alignment of Claimant's spine at the thoracolumbar junction and changed the mechanics of his back at the level of the fracture, putting more stress on the lower back. (R.R. at 163a-64a, 177a.) Dr. Liss agreed that Claimant's compression fracture has healed but explained that this assessment does not mean that Claimant's back pain is unrelated to the fracture, as it is common for patients with this type of injury to have migration of pain to the lower back. With regard to work restrictions, Dr. Liss restricted Claimant to light-duty work of lifting no more than twenty pounds and indicated that this measure was necessary because of his work injury.

On cross-examination Dr. Liss acknowledged that Claimant is a heavy cigarette smoker and that there is an increased incidence of back pain in smokers. He also acknowledged that osteoporosis can lead to back pain and that people with this condition are more prone to fractures. (R.R. at 174a, 178a.)

By January 4, 2023 decision, WCJ Yanity granted Employer's 2021 Termination Petition and terminated Claimant's WC benefits as of August 24, 2021. In doing so, WCJ Yanity determined that the credible testimony of Dr. Thomas

5

conclusively demonstrated that Claimant had made a full recovery from his work-related injury as of the date of the IME. WCJ Yanity found that the evidence showed "Claimant's condition had changed since the previous litigation, insofar as Claimant's T12 compression fracture had healed, and there was no objective evidence of muscle spasm which would suggest ongoing lumbar strain. Even Claimant's own treating physician, Dr. Liss, agreed that the T12 compression fracture had healed." (R.R. at 224a.) WCJ Yanity rejected Dr. Liss' testimony to the extent that it was contrary to that of Dr. Thomas because there was no medical dispute that Claimant's compression fracture had healed and Dr. Liss offered no objective evidence that Claimant suffers from an ongoing work injury. WCJ Yanity accepted as credible the "logical, thorough, and well-reasoned opinions of Dr. Thomas, who convincingly explained that Claimant's current back problems are the result of osteoporosis and an underlying degenerative condition." (R.R. at 225a.)

Claimant appealed to the Board, arguing that Dr. Thomas's testimony failed to show the required change of condition since the last disability adjudication and that the WCJ's finding of full recovery and termination of benefits is barred by the doctrine of *res judicata*. On July 24, 2023, the Board affirmed WCJ Yanity's decision. (R.R. at 236a-37a.) This appeal followed.

## II. Analysis[1]

### Sufficiency of the Evidence to Support Termination of WC Benefits

Claimant first argues the Board erred by affirming WCJ Yanity's decision granting Employer's 2021 Termination Petition because Employer failed to establish

---

[1] Our standard of review is limited to determining whether the findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Phoenixville Hospital v. Workers' Compensation Appeal Board (Shoap)*, 81 A.3d 830, 838 (Pa. 2013).

that Claimant's medical condition had changed since the 2020 Termination Petition was denied. (Claimant's Br., at 18-30.) Claimant contends that Dr. Thomas's testimony was insufficient as a matter of law to establish a change in his physical condition and that, in contravention of controlling caselaw, Dr. Thomas failed to accept the adjudicated diagnosis from the prior proceeding. *Id.* at 28-30. We disagree.

Section 413(a) of the Workers' Compensation Act (Act)[2] authorizes termination of benefits based on medical evidence demonstrating that a claimant's work-related injury has resolved. It provides in pertinent part:

> A workers' compensation judge designated by the department may, at any time, . . . terminate a notice of compensation payable . . . upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed.

77 P.S. § 772.[3]

"To succeed in a termination petition, an employer bears the burden of proving by substantial evidence that a claimant's disability ceased, or any remaining conditions are unrelated to the work injury." *Westmoreland County v. Workers' Compensation Appeal Board (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008). "An employer may satisfy this burden by presenting unequivocal and competent medical evidence of the claimant's full recovery from [his] work-related injuries." *Id.*

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2710.

[3] Under the Act, the term 'disability' is synonymous with loss of earning power. *Donahay v. Workers' Compensation Appeal Board (Skills of Central PA, Inc.),* 109 A.3d 787, 792 (Pa. Cmwlth. 2015).

In *Lewis v. Workers' Compensation Appeal Board (Giles & Ransome, Inc.)*, 919 A.2d 922 (Pa. 2007), our Supreme Court outlined the applicable standard as follows:

> In order to terminate benefits on the theory that a claimant's disability has reduced or ceased due to an improvement of physical ability, it is first necessary that the employer's petition be based upon medical proof of a change in the claimant's physical condition. Only then can the workers' compensation judge determine whether the change in physical condition has effectuated a change in the claimant's disability, *i.e.*, the loss of his earning power. Further, by natural extension it is necessary that, where there have been prior petitions to modify or terminate benefits, the employer must demonstrate a change in physical condition since the last disability determination.

*Id.* at 926.

In a case where the claimant continues to experience pain, an employer's burden is met where its medical expert unequivocally opines within a reasonable degree of medical certainty that the claimant is fully recovered, can return to work without restrictions necessitated by the work injury and there are no objective medical findings connecting the claimant's substantiated complaints of pain to the work injury. *Baumann v. Workers' Compensation Appeal Board (Kellogg Co.)*, 147 A.3d 1283, 1290 (Pa. Cmwlth. 2016). If the WCJ credits this testimony, the termination of benefits is proper, as it is well settled that the WCJ is the ultimate factfinder with exclusive province over questions of credibility and evidentiary weight and is therefore free to accept or reject the testimony of any witness in whole or in part. *Id.*

Here, Dr. Thomas unequivocally testified that Claimant's work-related injury, which he described as mild in nature, had fully healed since the prior adjudication and that this injury was not the cause of Claimant's continued complaints

8

of low back pain. Dr. Thomas firmly attributed any ongoing pain to Claimant's separate condition of osteoporosis, which he opined had not been adequately treated, and he also pointed to Claimant's long-term heavy cigarette use as a potential contributor to his pain. WCJ Yanity credited Dr. Thomas's testimony which he found logical and convincing over the testimony of Dr. Liss, which he found not credible to the extent that it conflicted with Dr. Thomas's testimony.

Based upon its review of the record and mindful of WCJ Yanity's role as factfinder, the Board determined:

> The WCJ found Dr. Thomas' opinions credible, observing that Dr. Thomas conducted a thorough physical examination and his opinions were supported by the diagnostic studies. He further found Dr. Thomas credibly testified that Claimant's condition had changed, insofar as the compression fracture had healed and there was no objective evidence of muscle spasm, and convincingly explained that Claimant's then-current back problems were not related to the work injury. He rejected Dr. Liss' opinion. . . .
>
> Upon review, we affirm. The employer must demonstrate a change in condition, and may not simply challenge the diagnosis as determined by a prior proceeding. Claimant argues that Dr. Thomas impermissibly challenged the causal connection between the compression fracture and Claimant's low back pain. To the contrary, Dr. Thomas accepted the adjudicated diagnoses. He acknowledged Claimant could have had pain related to the fracture, but the pain of which Claimant complained at the time of his examination was not. The WCJ accepted Dr. Thomas' opinion and found that Claimant's condition had changed. If the employer has accepted the adjudicated condition and proves recovery at a later date, the employer has shown a physical change of condition. We determine no error.

(R.R. at 235a-36a) (citations omitted).

9

Based on the foregoing, we conclude there was substantial evidence to support WCJ Yanity's conclusion that Employer proved there was a change in Claimant's physical condition since WCJ Gallishen's prior decision such that the *Lewis* standard was met. Accordingly, Claimant's first issue lacks merit.

**Applicability of the Doctrine of *Res Judicata***

Claimant next contends that the doctrine of *res judicata* precludes a termination of his WC benefits. Relying on this Court's decision in *Volkswagen of America, Inc. v. Workers' Compensation Appeal Board (Bennett)*, 858 A.2d 151 (Pa. Cmwlth. 2004), Claimant maintains that because the issue of causation for his work-related injury was previously adjudicated in the initial 2020 proceeding, Employer is barred from re-litigating the issue. (Claimant's Br., at 30-36.)

The doctrine of *res judicata* encompasses the two related, yet distinct principles of technical *res judicata* (claim preclusion) and collateral estoppel (issue preclusion). *Maranc v. Workers' Compensation Appeal Board (Bienenfeld)*, 751 A.2d 1196, 1199 (Pa. Cmwlth. 2000). Claimant's argument implicates collateral estoppel, which bars re-litigation of an issue decided in a prior action. *Boulin v. Brandywine Senior Care, Inc. (Workers' Compensation Appeal Board)* __ A.3d__, (Pa. Cmwlth., No. 1273 C.D. 22, filed January 2, 2024), slip op. at 8, 2024 WL 15949, at *4. "Collateral estoppel may be applied only if both cases involve the same issue, the prior action was litigated to a final judgment on the merits, the party to be estopped was a party or was in privity with a party to the prior action and had a full and fair opportunity to litigate the issue in the prior action, and resolution of the issue in the prior proceeding was essential to the judgment." *Id.*

In *Volkswagen*, the claimant was receiving benefits for an August 1988 back injury when his employer filed a termination petition in December of 1988

alleging that he had fully recovered from the work-related injury. At the WCJ proceedings, the claimant's treating physician testified that the claimant continued to have back problems, a left leg atrophy, and an absent Achilles reflex that were caused by the work injury. The WCJ credited this testimony and denied the termination petition.

The employer then filed a second termination petition and offered the testimony of a medical witness who testified that the claimant had fully recovered from the back injury and that the left leg atrophy and absent Achilles reflex were caused by non-work related factors. The WCJ accepted this testimony and granted the second termination petition, but the Board reversed, holding that the findings in the second termination proceeding conflicted with the findings in the initial termination proceeding and therefore were precluded by the doctrine of *res judicata*. In affirming the Board, we held that the cause of the claimant's leg atrophy and absent Achilles reflex had been judicially determined in the first termination proceeding and the employer could not relitigate this issue where it "did not produce evidence that claimant was fully recovered from the work-related injuries [and] failed to prove that there had been some change in the disability or that it had ceased." *Volkswagen*, 858 A.2d at 155.

Here, in contrast to the circumstances of *Volkswagen,* Employer **did present** evidence that Claimant was fully recovered from the April 2019 work-related injury as of August 2021 through the testimony of Dr. Thomas, who accepted Claimant's initial diagnosis for his work injury of lumbar strain and T12 compression fracture as appropriate. Dr. Thomas opined that Claimant's work-related injury had resolved during the time period that had passed between the first adjudication and the Claimant's 2021 IME. Dr. Thomas characterized Claimant's compression fracture as

11

mild and explained that the recovery time for lumbar strain can vary from weeks to a few months. Based on his physical examination of Claimant and his review of Claimant's medical records, including MRI scans and updated X-rays, Dr. Thomas opined that any low back pain Claimant presently experienced was attributable to his osteoporosis and factors unrelated to his 2019 work injury. Therefore, because Employer's 2021 Termination Petition did not relitigate the adjudication initially reached in this matter but rather focused on the change in Claimant's condition since that decision, the doctrine of *res judicata* is not applicable and does not provide Claimant with a basis for relief. *See Boulin*, slip op. at 11, 2024 WL 15949, at *4.

Accordingly, we conclude that the Board properly affirmed WCJ Yanity's decision granting Employer's 2021 Termination Petition. The Order of the Board is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Dalzell,                                    :
                Petitioner            :
                                             :
                v.                          :     No. 903 C.D. 2023
                                             :
Forest Hills Borough-Allegheny and     :
Municipal Risk Management Workers'   :
Compensation Pooled Trust (Workers'   :
Compensation Appeal Board),                  :
                Respondents            :

## *<u>ORDER</u>*

AND NOW, this 1st day of March, 2024, the July 24, 2023 Opinion and Order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge