# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Johnny L. Pierson, : 
                Petitioner : 
                 : 
      v. :   No. 396 C.D. 2023
                 : 
Consol Pennsylvania Coal :   Submitted: March 8, 2024
Company, LLC (Workers' : 
Compensation Appeal Board), : 
              Respondent : 

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE LORI A. DUMAS, Judge

## _OPINION NOT REPORTED_

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                   FILED: March 28, 2024

Johnny L. Pierson (Claimant) petitions for review of the Workers' Compensation (WC) Appeal Board's (Board) March 30, 2023 order affirming the Workers' Compensation Judge's (WCJ) September 19, 2022 decision granting Consol Pennsylvania Coal Company, LLC's (Employer) Petition to Terminate Claimant's WC benefits (2021 Termination Petition). On appeal, Claimant contends that the evidence failed to demonstrate that he had fully recovered from his 2014 work injury since a prior adjudication. After review, we affirm.

## I. Background

On August 13, 2014, Claimant sustained an injury to his shoulder when he tripped and fell while unloading a large piece of pipe from a mine car during the course and scope of his employment as a hoist man and operator at the Harvey Mine.

Employer accepted the injury by a Notice of Compensation Payable which described Claimant's injury as a labral tear of his right shoulder. On April 17, 2017, Employer filed a petition to terminate Claimant's WC benefits, maintaining that Claimant had fully recovered from his injury as of March 30, 2017 (2017 Termination Petition). Claimant filed a review petition seeking to expand the description of his injury to include "lateral epicondylitis with tear of the ECRB [(extensor carpi radialis brevis)] tendon of the right elbow, right shoulder recurrent subacromial impingement along with biceps rotator cuff interval capsular tears, glenohumeral arthritis, partial labial tears, or symptomatic acromioclavicular arthritis." (Reproduced Record (R.R.) at 20a.)

Hearings were held before WCJ Charles Lawton (WCJ Lawton), at which Employer offered the September 6, 2017 deposition of orthopedic surgeon D. Kelly Agnew, M.D. (Dr. Agnew), who conducted an independent medical examination (IME) of Claimant on March 29, 2017. Claimant testified and offered the depositions of orthopedic surgeon Michael J. Rytel, M.D. and Mark W. Rodosky, M.D. (Dr. Rodosky), who specializes in the treatment of shoulder problems. By October 19, 2018 decision, WCJ Lawton denied the 2017 Termination Petition based on his determination that Employer failed to demonstrate Claimant had fully recovered from his work injury as of the March 2017 IME. (R.R. at 20a.) WCJ Lawton also denied Claimant's review petition, finding that Claimant failed to establish that the description of his work injury should be amended to include additional diagnoses.

Approximately four years after the first IME, Claimant underwent another IME performed by Dr. Agnew on April 22, 2021, following which Dr. Agnew opined that Claimant had fully recovered from his 2014 work accident and could return to work without restrictions. (R.R. at 22a.) Employer filed the 2021 Termination Petition on May 5, 2021, based upon Dr. Agnew's conclusion. Claimant filed a review petition

2

on November 1, 2021, requesting that his injury be expanded to include a "right shoulder SLAP [(superior labrum anterior and posterior]) lesion and preglenoid cyst and recurring labral tears of the right shoulder, right shoulder subacromial decompression including acromioplasty, subscapular nerve palsy, [and] subscapular adhesions, with frozen shoulder, resulting in surgeries." (R.R. at 91a.)

WCJ Lawton conducted hearings at which Employer presented Dr. Agnew's November 3, 2021 deposition wherein he testified that, as part of his examination of Claimant, he secured a history, reviewed medical records including X-rays and magnetic resonance imaging (MRI) history and read documentation prepared by Claimant's treating physicians. Dr. Agnew opined that Claimant's 2014 work injury was limited to an isolated labral tear that was successfully treated and had resolved. (R.R. at 121a-23a, 140a.) Dr. Agnew explained that this injury did not occur "in the setting of a normal shoulder" because Claimant had underlying degeneration in that area secondary to glenohumeral arthritis, which had produced additional labral fraying or tearing. (R.R. at 121a.)

Dr. Agnew noted the absence of disuse atrophy in Claimant's right shoulder, and that Claimant's right arm circumference was larger than that of his left arm. In fact, the size of Claimant's right arm had increased since his first IME, indicating his substantial use of that arm and improvement in his evaluation from the prior exam. (R.R. at 134a-36a.) Dr. Agnew testified that "there is nothing about the mechanism of injury from August 2014 and nothing about the damage actually sustained to the labrum that day which would in any way accelerate the arthritic process" and opined that Claimant's other diagnoses were unrelated to the work injury. (R.R. at 139a-40a.) Regarding Claimant's continued activity impairment, Dr. Agnew noted Claimant's medical comorbidities unrelated to the shoulder injury of chronic

3

knee pain, asthma, kidney stones, coronary artery disease, fibromyalgia, and depression as contributing factors.

Dr. Agnew prepared a physician's affidavit of recovery and opined that Claimant fully recovered from the work injury as of the date of the IME. He also opined that Claimant does not require any additional treatment for the work-related injury, that no work restrictions were necessary due to that injury, and that, "from the standpoint of the isolated labral tear alone, he would be capable of any and all activities of which he was capable on or just before August 13 of 2014." (R.R. at 152a.)

Claimant testified that he sustained the 2014 work injury when he was in his early 40s while he was handling an aluminum pipe at the mine. Claimant returned to work immediately after this injury and worked without interruption until January of 2016, when a large crank grabbed ahold of his glove, yanked his right arm, and injured his hand. Claimant has not returned to work since that time and is receiving WC benefits for the August 2014 injury. (R.R. at 50a-51a.) Claimant reported that he underwent shoulder surgery in July of 2021 and has had physical therapy since that time. He described his symptoms as constant pain, difficulty sleeping, migraines, and a lack of mobility in his right extremity. On cross-examination, Claimant testified that he has not applied for any sedentary work, that he is able to drive, and that he is involved in the home schooling of his children. (R.R. at 81a-83a.)

Claimant presented the March 3, 2022 deposition of Rekha Galla, M.D. (Dr. Galla), who is board certified in anesthesiology and chronic pain management. Dr. Galla treated Claimant for right shoulder pain on nine occasions between December 2020, and January 2022, and he testified that Claimant continued to experience significant pain and limited range of motion in his right shoulder as of his last office visit. (Dr. Galla Dep., 3/03/22, at 10-11, 15.) Dr. Galla diagnosed Claimant with "right

4

shoulder degenerative joint disease at the glenohumeral, as well as AC joint; SLAP lesions in the shoulder; recurrent rotator cuff tears of the supraspinatus; and recurrent biceps and labral tears." (*Id.* at 24.) He opined that Claimant's August 2014 work injury resulted in chronic right shoulder pain and an aggravation of his underlying arthritis at the glenohumeral joint. Dr. Galla described Claimant's overall prognosis as poor and opined that he cannot return to his previous full-time employment because of his shoulder injury and should instead be restricted to light duty sedentary work.

Claimant also presented the depositions of Dr. Rodosky, dated December 1, 2017, and April 12, 2022. Dr. Rodosky reported that he examined Claimant in January and April of 2017, and that Claimant presented with a chief complaint of right shoulder pain. (Dr. Rodosky Dep., 12/01/17, at 6, 14.) Dr. Rodosky's working diagnosis of Claimant was "a right shoulder recurrent subacromial impingement along with biceps rotator cuff interval capsular partial tears, glenohumeral arthritis, partial labral tears and symptomatic acromioclavicular arthritis." (*Id.* at 14-15.) He opined that Claimant's partial labral tears and the biceps rotator cuff interval capsular partial tears were related to the 2014 work injury, and that while the underlying arthritis was present before the injury, the injury aggravated it.

During his April 12, 2022 deposition, Dr. Rodosky testified that he performed shoulder surgery on Claimant in July of 2019, and that the procedure did not resolve his pain. (Dr. Rodosky Dep., 4/12/22, at 14-15.) Dr. Rodosky again conducted surgery on Claimant in July of 2021 and treated him post-operatively. As of Claimant's last office visit in November of 2021, Dr. Rodosky placed Claimant on sedentary work duty based on his assessment that Claimant is not capable of returning to his time of injury position. Dr. Rodosky opined that the aggravation of Claimant's

arthritis and other ancillary pathologies necessitating surgical intervention were causally related to his work injury, and that he will never return to his pre-injury state.

By September 19, 2022 decision, WCJ Lawton granted Employer's 2021 Termination Petition and terminated Claimant's WC benefits as of April 21, 2021. In doing so, the WCJ accepted Dr. Agnew's testimony as credible over the testimony of Claimant's medical witnesses and noted that Dr. Agnew's examination was more thorough than the examinations by Claimant's experts. The WCJ determined that Employer established Claimant's full recovery from his work-related injury as of the date of his 2021 IME; found persuasive Dr. Agnew's testimony that there is nothing about an isolated tear of the labrum which would cause or aggravate Claimant's arthritis diagnoses or lead to additional degenerative labral tears; and these additional diagnoses were instead related to the passage of time in an already arthritic shoulder. (R.R. at 214a.) Regarding Claimant's review petition, the WCJ rejected Claimant's position that the description of his work injury should be expanded and specifically found that "Claimant's experts, in formulating their opinions, have rejected the findings from the prior decision indicating that the injury was limited to a labral tear." (R.R. at 215a.)

Claimant appealed to the Board, arguing that Employer failed to establish his full recovery from his work injury since the last disability adjudication. The Board affirmed WCJ Lawton's decision on March 30, 2023. This appeal followed.

## II. Analysis[1]

On appeal, Claimant challenges the Board's decision affirming WCJ Lawton's grant of Employer's 2021 Termination Petition by contending the evidence fails to demonstrate he had fully recovered from his 2014 work injury. Claimant's argument is twofold, in that he first argues the WCJ disregarded the findings made regarding the 2017 Termination Petition where Dr. Agnew offered essentially the same testimony during both the 2017 and 2021 proceedings. (Claimant's Br., at 13-17.) Claimant also maintains that WCJ Lawton failed to make an express factual determination that his physical condition had changed since the 2017 adjudication, in contravention of controlling case law. (*Id.* at 17-19.) We disagree.

Section 413(a) of the Workers' Compensation Act (Act)[2] authorizes the termination of benefits based on medical evidence demonstrating that a claimant's work-related injury has resolved. It provides in pertinent part:

> A workers' compensation judge designated by the department may, at any time, . . . terminate a notice of compensation payable . . . upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed.

77 P.S. § 772.[3]

---

[1] Our standard of review is limited to determining whether the findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Phoenixville Hospital v. Workers' Compensation Appeal Board (Shoap)*, 81 A.3d 830, 838 (Pa. 2013).

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2710.

[3] "Under workers' compensation law, the term disability is synonymous with loss of earning power." *Donahay v. Workers' Compensation Appeal Board (Skills of Central PA, Inc.),* 109 A.3d 787, 792 (Pa. Cmwlth. 2015).

"To succeed in a termination petition, an employer bears the burden of proving by substantial evidence that a claimant's disability ceased, or any remaining conditions are unrelated to the work injury." *Westmoreland County v. Workers' Compensation Appeal Board (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008). "An employer may satisfy this burden by presenting unequivocal and competent medical evidence of the claimant's full recovery from [his] work-related injuries." *Id.*

In *Lewis v. Workers' Compensation Appeal Board (Giles & Ransome, Inc.)*, 919 A.2d 922 (Pa. 2007), our Supreme Court outlined the applicable standard as follows:

> In order to terminate benefits on the theory that a claimant's disability has reduced or ceased due to an improvement of physical ability, it is first necessary that the employer's petition be based upon medical proof of a change in the claimant's physical condition. Only then can the workers' compensation judge determine whether the change in physical condition has effectuated a change in the claimant's disability, *i.e.*, the loss of his earning power. Further, by natural extension it is necessary that, where there have been prior petitions to modify or terminate benefits, the employer must demonstrate a change in physical condition since the last disability determination.

*Id.* at 926.

In a case where a claimant continues to experience pain, an employer's burden is met where its medical expert unequivocally opines within a reasonable degree of medical certainty that the claimant is fully recovered, the claimant can return to work without restrictions necessitated by the work injury, and there are no objective medical findings connecting the claimant's substantiated complaints of pain to the work injury. *Baumann v. Workers' Compensation Appeal Board (Kellogg Co.)*, 147 A.3d 1283, 1290 (Pa. Cmwlth. 2016). If the WCJ credits this testimony, the

8

termination of benefits is proper, as it is well settled that the WCJ is the ultimate factfinder with exclusive province over questions of credibility and evidentiary weight and is therefore free to accept or reject the testimony of any witness in whole or in part. *Id.*

Here, Dr. Agnew unequivocally testified that Claimant's 2014 work injury, which he described as limited in nature, had fully healed since the prior adjudication, and that this injury was not the cause of Claimant's continued complaints of pain. Dr. Agnew firmly attributed any ongoing pain to Claimant's separate underlying condition of arthritis, which was not aggravated by his work injury, and he also pointed to Claimant's unrelated comorbid conditions including chronic knee pain, asthma, coronary artery disease, and fibromyalgia as potential contributors to his inactivity. WCJ Lawton credited Dr. Agnew's testimony over the testimony of Claimant's medical witnesses, which he found not credible to the extent that it conflicted with Dr. Agnew's testimony.

Based upon its review of the record and mindful of WCJ Lawton's role as factfinder, the Board determined:

> As to the Termination Petition, [Employer] established that Claimant had fully recovered from the August 13, 2014 injury as of April 21, 2021 based on the credited opinion of Dr. Agnew that there was a change in Claimant's physical condition between the first IME on March 29, 2017 and the second IME on April 21, 2021. Consequently, there was substantial, competent evidence supporting a change in Claimant's physical condition since the WCJ's October 19, 2018 decision and the date the WCJ found Claimant to be fully recovered.
>
> Specifically, [Employer] had alleged in its first Termination Petition that Claimant had fully recovered as of March 30, 2017, but that petition was denied in the WCJ's

9

October 19, 2018 decision.  Thus, [Employer] had the burden of proving in the present Termination Petition, through the presentation of medical evidence, a change in Claimant's physical condition between October 19, 2018, the date of the prior adjudication, and April 21, 2021, the second date it alleged full recovery.  [Employer's] case had to begin with the adjudicated facts as to the first Termination Petition and work forward in time to show the required change. . . .

In the instant case, the WCJ accepted [Employer's] medical evidence of full recovery based on a changed condition as credible and thus the change in condition standard set forth in *Lewis* was met.  When asked whether there had been a change in Claimant's condition from the first IME on March 29, 2017 and the second IME April 21, 2021, Dr. Agnew replied: There had been a change in the four years between my examinations.  Dr. Agnew explained the basis for this conclusion, including that there "was a physical examination change in that [Claimant] had not only failed to develop atrophy from disuse over those four years but had actually gained muscle mass at both arms and forearms, remaining larger on the right, dominant side than he was on the left."  Dr. Agnew further opined that Claimant did not need additional treatment or restrictions in relation to the resolved work injury.  The WCJ specifically credited this testimony.

Furthermore, Dr. Agnew indicated that his second opinion of full recovery was based in part on documentation generated after the prior adjudication on October 19, 2018.  This documentation included notes concerning Claimant's right shoulder surgery on July 23, 2019, a February 5, 2020 note, a December 9, 2019 MRI, April 2021 radiographs, and Dr. Gall[a]'s June 2021 narrative letter.  The WCJ did not accept Claimant's testimony regarding the extent of his symptoms and limitations based on the nonorganic findings made by Dr. Agnew and noted that the cause of Claimant's problems is a medical question.  Dr. Agnew's testimony that he found no muscle atrophy from his last exam over three years prior demonstrated to him that there was no disuse of

10

the arm. Because the WCJ accepted the defense expert's testimony, a change in physical condition was established and the *Lewis* standard was satisfied. As such, the credited testimony of Dr. Agnew constitutes substantial, competent evidence supporting a change in Claimant's physical condition since the WCJ's October 19, 2018 decision denying the first Termination Petition. Therefore, the WCJ did not err by granting the second Termination Petition.

(R.R. at 227a-30a.) (most citations omitted).

Based on the foregoing, we conclude there was substantial evidence to support the WCJ's conclusion that Employer proved there was a change in Claimant's physical condition since the prior adjudication such that the *Lewis* standard was met. Despite Claimant's repeated attempts to expand the 2014 work injury to include additional unrelated diagnoses, the evidence demonstrates that his injury was limited, had fully resolved as of the date of the second IME, and his ongoing complaints of pain were attributable to the pre-existing nature of his degenerative arthritic condition.

Additionally, while Claimant asserts that WCJ Lawton failed to make the necessary factual finding of a change in his physical condition since the prior adjudication, a review of the WCJ's decision makes clear that he **did make** this finding, albeit not using those express terms. Mindful of the fact that WCJ Lawton held both the 2017 and 2021 termination proceedings, a fair reading of his decision plainly reflects his conclusion that there had been an improvement in Claimant's physical condition over the span of the approximate four-year period between those hearings, to the extent that his work injury had fully resolved. Accordingly, because Claimant's issues on appeal lack merit, we affirm the Opinion and Order of the Board.

_____
PATRICIA A. McCULLOUGH, Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Johnny L. Pierson,  :
                 Petitioner  :
                   :
         v.  :    No. 396 C.D. 2023
                   :
Consol Pennsylvania Coal  :
Company, LLC (Workers'  :
Compensation Appeal Board),  :
                 Respondent  :

## ***ORDER***

AND NOW, this 28th day of March, 2024, the March 30, 2023 Opinion and Order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge